MICHAEL J. McGENNESS *vs.* ADRIATIC MILLS.

Worcester. September 30. — October 24, 1874. COLT & MORTON, JJ., absent.

A declaration which alleges that a nuisance has been created and maintained by discharging through a box drain filthy and polluted water upon the land of A. is supported by proof that the waters of a natural stream have been polluted, and by means of a box drain placed partly in the watercourse and partly upon the land of A., discharged upon said land; and A. is not deprived of his remedy for the nuisance by the fact that he has a right of action for the pollution and diversion of the natural stream.

In an action against a manufacturing corporation for a nuisance, a statement of its superintendent that the nuisance existed and would be remedied, and that " he would not have it around his place for $500," is competent evidence against the corporation.

TORT for a nuisance. Writ dated August 15, 1872. The plaintiff by an amended count to his declaration, which was the one relied on at the trial, alleged that from January 1, 1867, to the date of the writ he was the owner of a certain parcel of land with a dwelling-house thereon, and that the defendant, a corporation, had " created, continued and maintained a nuisance on the land of the plaintiff, to wit : a box drain extending from the mill and premises of the defendant corporation, through which the defendant conveys to and upon the land of the plaintiff filthy and polluted water."

At the trial in the Superior Court, before *Allen*, J., it appeared that a natural watercourse rising in springs on the defendant's premises flowed therefrom across a street by means of a culvert, thence between the plaintiff's lot and an adjoining lot for some distance, and thence away from the plaintiff's lot. The evidence tended to show that in the year 1866 the defendant put into the channel of the watercourse a covered box, extending from its

premises to and across the street and following the natural channel for a certain distance between the plaintiff's lot and the adjoining lot, and then turning out of the natural channel upon the plaintiff's lot and extending a certain distance from said point of turning, and that the defendant caused the waters of the watercourse to flow through the box into and upon the plaintiff's land; that the defendant used the waters of the watercourse in its business, on its premises, for dyeing and scouring and other purposes, thereby corrupting and rendering the same impure, and then returned it to the said channel and box before it left the premises of the corporation; that the covering of the box at one or more points on the plaintiff's land burst open by reason of being stopped up by waste from the defendant's mill, and the polluted waters gushed out upon and over a part of the plaintiff's lot, causing the nuisance complained of.

The plaintiff was allowed to put in the declarations of the superintendent of the defendant's mill with reference to the alleged nuisance, made in the spring of 1872 to a witness who testified in substance as follows: " I went to Gledhill, the superintendent, in the spring of 1872; asked what he was going to do with the nuisance. He said he had got to put the trough in some other way. I went again and he said, ' John, I am going to stop it.' He said, ' We are are going to take right hold of it.' He said he was going to clear it up. He said, ' I would n't have it round my place as it is around there for $500.' Said he had to wait the motion of the company." The defendant objected to the admission of this evidence and excepted thereto.

At the close of the evidence the defendant asked the judge to rule that there was no evidence to go to the jury in support of the declaration, and to direct a verdict for the defendant; and also asked the judge to rule as follows: " 1. If the stream or channel was a natural watercourse, the plaintiff cannot recover in this action. 2. If there was a natural watercourse running along by the plaintiff's land or on it, and the defendant entered on the plaintiff's land and put down a box or drain into which the waters of that watercourse were turned, the plaintiff in this action can recover only the damage to his land by putting down that drain, and cannot recover for polluting the waters of that watercourse, or for diverting them upon his land, or for any nuisance caused by

polluting the waters of the watercourse. 3. If the defendant put a box into the natural watercourse for a certain distance, and then turned and extended the box out of the natural channel on to the plaintiff's land, and caused the waters of the natural watercourse to flow through the box upon the plaintiff's land after having polluted the water on its own premises, the plaintiff cannot recover in this case, although the purpose and object of the defendant in putting in and using the box were for a drain."

The judge declined to give any of these instructions, and instructed the jury as follows:

"If the defendant in 1866, without right, for the purpose of draining its premises, put the box on the plaintiff's land, and diverted into it the waters of a natural stream, and so maintained and used it during the time alleged in the declaration, it may be liable for the injuries alleged in the declaration, although caused by the pollution of the waters of the natural stream by the defendant before it left its premises."

The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*F. P. Goulding*, for the defendant. 1. There was a variance between the declaration and the proof. The declaration is for erecting and maintaining a box drain and emptying filthy water by means of it upon the plaintiff's property. The proof shows that the cause of action is the diverting and polluting the waters of a natural stream. Gen. Sts. c. 129, § 2, cl. 3. *Hollis* v. *Richardson*, 13 Gray, 392. *Read* v. *Smith*, 1 Allen, 519. *Murdock* v. *Caldwell*, 10 Allen, 299. *Griffith* v. *Jenkins*, 2 Allen, 589.

2. The rulings prayed for should have been given. A judgment in this case would be no protection against an action for diverting the stream and polluting the water. The injury for which the plaintiff was allowed to recover was the continuance of the polluted condition and diversion of the water after the 1st of January, 1867. If it was an artificial stream, as the declaration alleges, the defendant would be liable for nominal damages, at least, for every moment of time, for the flow of the water at every point on the plaintiff's land. If it was a natural watercourse, the defendant would only be liable above the point of diversion for such time as the water was polluted.

3. It was not within the scope of the superintendent's agency to state the damage arising from the alleged nuisance. The declarations of an agent are admissible only as a part of the *res gestæ*, and it must appear that the declarations had relation to the subject matter of his employment. *Woods* v. *Clark*, 24 Pick. 35. *Dorne* v. *Southwork Manufacturing Co.* 11 Cush. 205. *Cooley* v. *Norton*, 4 Cush. 93. Story Agency, §§ 134, 135.

*W. A. Gile*, for the plaintiff.

DEVENS, J. It is argued for the defendant that the evidence offered by the plaintiff wholly fails to sustain the amended count in the declaration, which was the one relied on, and which alleges a nuisance caused by erecting and maintaining a box drain and emptying filthy water by means of it upon the plaintiff's estate. The allegation of a nuisance as charged is however sustained by the proof, notwithstanding the water conducted through the box drain may be the water of a natural stream, which, before it was thus confined, was accustomed to flow between the lands of the plaintiff and of another, which water is now conducted upon the plaintiff's land, and notwithstanding the water thus conducted may have been polluted by the act of the defendant before it entered the drain. The gist of the plaintiff's action is the nuisance created by the injury to the atmosphere and consequent danger to health that has been occasioned by confining water of this character in the drain and conducting it in such a manner that it has been caused to flow out upon and over his land. There was evidence of this in the case, and the plaintiff is not to be deprived of remedy for this injury to him in the occupation of his land, because he may have rights in the stream which would enable him also to maintain an action for diverting its waters so that he could not use them as he had been accustomed to do, or for polluting them so that they had been rendered useless or diminished in value for the purposes for which he had the right to enjoy them. The defendant was not therefore entitled to the instructions requested, and that given by the presiding judge was correct.

The remaining question is in reference to the admission in evidence of the statement of the superintendent. The defendant is a corporation, and can only act through agents, and, in the absence of any evidence to the contrary, the superintendent in

charge of the mill must be deemed the proper person to whom to make complaint and to have authority to give information and direction in regard to the drainage from it.   His recognition that it was a matter that required to be attended to and should be, was therefore properly put in evidence.   *Morse* v. *Connecticut River Railroad*, 6 Gray, 450.   The expression used by him, that he " would not have it around his place as it was around there for $500," was a mere mode of stating that the nuisance existed, and could not have been considered as an admission that this sum was the amount of the damages, nor do we understand that it was put in evidence as such.                           *Exceptions overruled.*