# HOUSTON E. & W. T. RY. CO. v. LORD et al. (No. 1463.)

(Court of Civil Appeals of Texas. Beaumont. Jan. 13, 1927.)

1. Railroads ⬅️381(3)—Minor, injured by train while sitting on tracks under circumstances making him trespasser, held guilty of contributory negligence.

Minor, killed by train while sitting on tracks under circumstances making him a trespasser, held guilty of contributory negligence as matter of law; it being immaterial that public had license to use track at point where injury occurred.

2. Evidence ⬅️244(15)—Statements of train operatives after injury, not constituting res gestæ, held inadmissible on issue of discovered peril.

In action for death of minor run down by train while sitting on tracks, statements made

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

by operatives of train after accident under circumstances not constituting res gestæ *held* inadmissible on issue of discovered peril.

**3. Railroads ⬤⟹400(14)—Evidence as to injury to minor sitting on railroad tracks held insufficient for jury on issue of discovered peril.**

In action for death of minor sitting on tracks, evidence showing that operatives of engine saw deceased sitting on tracks at time when it was impossible to stop train to avoid accident; that everything was done to stop train; and that accident was due entirely to deceased's contributory negligence, *held* insufficient for jury on issue of discovered peril

Appeal from District Court, Nacogdoches County; C. A. Hodges, Judge.

Action by Ardis Lord and others against the Houston East & West Texas Railway Company. From a judgment for plaintiffs, defendant appeals. Reversed and rendered.

Garrison & Watson and Baker, Botts, Parker & Garwood, all of Houston, for appellant.

S. M. Adams, of Nacogdoches, for appellees.

WALKER, J. Appellees instituted this suit to recover of appellant damages for the death of their minor son, who, while sitting on one of appellant's railroad tracks, was run over and killed by one of appellant's trains. Appellees alleged that appellant's servants were negligent in not discovering the deceased in time to avoid injuring him, and they also raise, by their pleadings, the issue of discovered peril against appellant. Appellant's answer was by exceptions, a general denial, and special pleas of contributory negligence. On a trial to a jury, judgment was entered for $2,500.

[1] The deceased was guilty of contributory negligence as a matter of law. He was killed while sitting on appellant's track under circumstances making him a trespasser. No fact or circumstance was offered explaining his presence on the track, or excusing his presence there. Blankenship v. Railway Co., 15 Tex. Civ. App. 82, 38 S. W. 216. Evidence showing that the public had a license to use the track at the particular point where the injury occurred will not relieve deceased of the charge of contributory negligence. For, as said by the court in Smith v. Railway Co., 34 Tex. Civ. App. 209, 78 S. W. 556:

"If the public had a license to use the track as a highway, no license can be inferred to use the track for sleeping or sitting purposes."

[2, 3] The only theory upon which appellant could be held liable would be "discovered peril." All the evidence on that issue was clearly hearsay, being statements made by the operatives of the train after the accident under circumstances not constituting res gestæ, and hence not admissible. Railway Co. v. Galloway (Tex. Civ. App.) 140 S. W. 368; Galveston Electric Co. v. Dickey, 59 Tex. Civ. App. 472, 126 S. W. 332; Wall & Stabe Co. v. Berger (Tex. Civ. App.) 212 S. W. 975. Yet for the purposes of this opinion we waive that objection and treat the evidence as properly before the jury. Appellees have not briefed the case. Therefore we adopt the following statement made by appellant as disclosing all the facts on that issue:

"We will now quote all the evidence that tends to throw any light on how the accident happened:

"The witness Parrott testified as follows:

"'My name is Frank Parrott. I live at Garrison. I was living there on the 10th of last July. I was constable there at that time. * * *

"'As to what the engineer first said to me about where he picked the body up, I will state that it was on this end of the Dillon trestle in Shelby county across the creek, and said that this darkey was sitting on the fireman's side—on the left. If the railroad runs east and west that would be on the south side; sitting on the trestle, and when he saw him he said he presumed that he was going to get off, but he just sat there, * * * and that, when he seen he didn't get up, he blew the whistle and rang the bell and pulled the air and reversed, but he held his position until he was too close—until he knocked him off. * * * He said he was sitting there on the trestle. He said he was sitting right on the end of the trestle, and that he kind of leaned back a little, but he, when he first saw him, supposed that he would get up. He said he blew his whistle and rang the bell, and when he saw he wasn't going to get up he pulled the air and reversed. As to whether he explained why he still hit him, I will state that I suppose by that that he, the negro, just didn't get up, and he knocked him off; that's all there was to it. As to how far he told me that he saw him, how far before he hit him, I will state that I don't remember, something like, I think he said 100 yards or 150 ahead of him. I think he said the train passed him about the length of the train before they picked him up.'

"Dr. Turner, witness produced by the plaintiffs, testified as follows:

"'I am not positive whether it was the conductor or engineer or fireman that I talked to. I can be positive that it was one of the employees of the railroad company. They made a statement to me as to where and how this accident occurred. * * * The party that I asked said he, this negro here that was hurt, was sitting on the upper end of the trestle, and he hit him. He did not say how far the engine was from the negro at the time he discovered him. I did not ask him. He stated to me, though, that he was sitting on the trestle.'

"The foregoing is all we know of how the accident happened.

"The plaintiffs then introduced the witness M. B. Bethel, a railroad engineer, but not the engineer of the train involved in the accident. Plaintiffs sought to show by said witness the distance in which a freight train could be

stopped. The testimony was inadmissible, as we will show hereafter, as being the opinion of the witness in answer to a hypothetical question based on facts concerning which there was no evidence in the record. However, granting for the purpose of argument that such testimony was admissible, it is our position that the plaintiffs proved positively by such testimony that the train could not be stopped in less than 1,000 feet, and it was shown by the testimony that the farthest point from the trestle which can be fixed as the point where the operatives first discovered deceased is 450 feet away from where the deceased was struck. Said witness' testimony is as follows:

" 'As to what distance it could be stopped, I will state that at that place it would take quite a distance. It would be according to the brakes; I couldn't tell without I was handling this train. Assuming that everything was in good order, and with safety to the train and life of the engineer, it is a hard question to answer, unless I knew the condition of the train and brakes. With the brakes absolutely all right and the train in perfect condition, a man should be able to stop in 1,500 feet. He could not stop in much less unless he had a mighty good train. I do not know that he could easily stop in 1,500 feet. As to my testifying as an experienced and capable engineer, with a train running at 45 miles per hour with 8 to 10 cars, the rules are to stop in 450 feet with safety to the passengers, I will state that with a passenger train, yes; passenger trains and freight trains are different. * * * As to what is the least distance I could stop a freight train of 15 cars, running 25 miles per hour on a track like the Dillon track, if I was doing my duty, I would say 1,000 feet.' "

Appellant further says:

"It was shown by the testimony that the farthest point from the trestle which can be fixed as the point where the operatives first discovered deceased is 450 feet away from where the deceased was struck."

We believe appellant correctly analyzes this evidence and states its legal effect in the following proposition, which we take from its brief and adopt as our disposition of the case:

"The only question to be determined by this honorable court is whether the issue of discovered peril should have been submitted to the jury. The only evidence in the record is that the engineer first discovered the deceased when the engine was at most 450 feet away and that the shortest distance in which a freight train on that track could be stopped is 1,000 feet. This evidence came from plaintiffs' own witnesses and proves conclusively that there was no issue to be submitted to the jury on the question of discovered peril. The evidence is clear, undisputed, and undebatable. It has only one meaning and only one conclusion can be drawn therefrom, and that is that, after the operatives of the engine saw the deceased sitting on the bridge, it was impossible to stop the train in time to avoid the accident. They rang the bell, blew the whistle, put the engine in reverse, which was all they could do. The law of physics

carried the train on past the point where the deceased was sitting. He was hit and killed. His death can be attributed solely to his own careless and reckless act in sitting down and going to sleep on the bridge too near the rail. The trial court should therefore have instructed a verdict in favor of the defendant."

Railway Co. v. McMillan, 100 Tex. 562, 102 S. W. 103, and Railway Co. v. Price (Tex. Com. App.) 240 S. W. 524, are directly in point on the facts of this case, fully sustaining appellant's proposition.

Reversed and rendered.