WEST TEXAS PRODUCE COMPANY v. R. F. WILSON ET UX.

No. 5449.   Decided February 4, 1931.
(34 S. W., 2d Series, 827.)

*McLean, Scott & Sayers, E. L. Gilbert* and *Hyer & Christian,* for appellant.

Testimony that Abe Fox, a house manager of defendant, West Texas Produce Company, stated, subsequently to the occurrence of the accident, that Buck Crawford, the driver of defendant's truck, was on a delivery for defendant at the time of the accident, was incompetent and inadmissible. Southern Surety Co. v. Nalle, 242 S. W., 197; Waggoner v. Snody, 98 Texas, 512; Cannel Coal Co. v. Luna, 144 S. W., 721; Ft. Worth & D. C. Ry. Co. v. Dysart, 136 S. W., 1117; Gulf, C. & S. F. Ry. Co. v. McMurrough, 91 S. W., 320; Houston & T. C. Ry. Co. v. La Farge, 84 S. W., 1072; Ward v. Powell, 127 S. W., 851; Liner v. U. S. Torpedo Co., 16 S. W. (2d) 519; Mo. Pac. Ry. Co. v. Sherwood, 84 Texas, 125, 19 S. W., 455, 459, 17 L. R. A., 642; Texas & N. O. R. Co. v. Jones, 242 S. W., 269; Paris & G. N. R. Co. v. Lackey, 171 S. W., 540; Wall & Stabe Co. v. Berger, 212 S. W., 975; Shelbyville Water & Light Co. v. McDade, 92 S. W., 568 (Ky.); Atkinson v. American School of Osteopathy, 144 S. W., 816, 822 (Mo.); Frank v. Wright, 205 S. W., 434 (Tenn.); 22 C. J., 386.

*Houtchens & Houtchens,* and *Clark & Clark,* for appellees.

There being testimony to the effect that Abe Fox was house manager of the defendant, and had full authority and complete charge of the defendant's trucks and of the employees, with authority to employ and discharge, and had the control and direction of the employees and the use of the truck, and directed the employees what trucks to use, what deliveries to make and when to make them, and the evidence showing that when inquiry was made as to the truck and the whereabouts of its driver, the president of the corporation, Boxstein referred them to Abe Fox, the testimony of witnesses that Abe Fox informed them that he was out on a delivery was competent and admissible. Booker-Jones Oil Co. v. Nat. Refining Co., 131 S. W., 623; City of Austin v. Nuchols, 94 S. W., 336; Cooper Grocery Co. v. Britton, 74 S. W., 91; Consolidated Kansas City Smelting & Refining Co. v. Gonzales, 109 S. W., 946; El Paso & S. W. Ry. Co. v. Eichel & Weikel, 130 S. W., 946; Gilmour v. Heinze, 19 S. W., 1075; Gulf C. & S. F. Ry. Co. v. Cunningham, 113 S. W., 767; Houston E. & W. T. Ry. Co. v. Campbell, 45 S. W., 2; Laredo Elec. Light & Mach. Co. v. United States Elec. Lighting Com., 26 S. W., 310; M. K. & T. Ry. Co. v. Brown, 155 S. W., 979; Mussellam v. Cincinnati, N. O. & T. P. Ry. Co., 104 S. W., 339; Panhandle & S. F. Ry. Co. v. Tisdale, 199 S. W., 347; Paraffine Oil Co. v. Berry, 93 S. W., 1089; Pecos & Northern Texas Ry. Co. v. Lovelady, 80 S. W., 867; Salvini v. Legumazabel, 68 S. W., 183; Standefer v. Ault-

man & Taylor Mach. Co., 78 S. W., 552; St. Louis & S. D. Ry. Co. v. Watkins, 100 S. W., 162; T. & P. Ry. Co. v. Lester, 12 S. W., 955; Tabet v. Powell, 78 S. W., 997; T. & P. Tel. Co. v. Prince, 82 S. W., 327; Texas Mfg. Co. v. Fitzgerald, 176 S. W., 891; Western Union Beef Co. v. Kirchevalle, 26 S. W., 147; Western Union Tel. Co. v. Bennett, 21 S. W., 699; White v. San Antonio Water Works, 29 S. W., 252.

ON MOTION FOR REHEARING.

In the event the statement and declaration of Abe Fox at the City Hall was not admissible as evidence in chief, the same was nevertheless competent and admissible in rebuttal and as impeachment, and the defendant having offered said Abe Fox as a witness who testified that he did not make such a statement at the City Hall, such error, if any, was cured, and the fact that such evidence was offered at an improper stage of the proceedings became harmless, and does not constitute reversible error. Alquist v. Eagle Iron Works, 101 N. W., 520; Atlas Lumber Co. v. Flint, 104 N. W., 1046; Baker v. Harmon, 254 S. W., 517; Camden Interstate Ry. v. Lester, 118 S. W., 268; East Tenn. Ry. v. Hester, 15 S. E., 825; Hartt v. Yturria Cattle Co., 210 S. W., 615; Hintz v. Graufner, 27 N. E., 935; Kampmann v. Cross, 194 S. W., 437; Main Street Garage v. Eganhouse, 223 S. W., 316; Moore v. Orgain, 291 S. W., 483; Neilson v. Nebo Brown Stone Co., 69 Pac., 289; St. Louis & S. F. Ry. v. George, 19 S. W., 1036; St. Louis & S. W. Ry. v. Wood, 192 S. W., 812; Togue v. John Coplice, 72 Pac., 297; Rev. Stas., art. 1859; Easley v. Mo. Pac. Ry. Co., 20 S. W., 1073.

MR. JUDGE SHARP delivered the opinion of the Commission of Appeals, Section A.

The Court of Civil Appeals for the Second Supreme Judicial District has certified to the Supreme Court the following questions:

"A collision occurred in the City of Fort Worth at the intersection of East Third Street with Jones Street between a delivery truck owned by the West Texas Produce Company, while being driven by its employee, Buck Crawford, and an automobile driven by R. F. Wilson. At the time of the collision, Wilson was driving east on East Third Street and Buck Crawford was driving the truck in a northerly direction on Jones Street. As the result of that collision Mrs. Wilson, the wife of R. F. Wilson, who was riding with him in the automobile at the time, sustained serious personal injuries as the automobile in which she was riding was turned over from the impact with the truck and she was thrown to the ground.

"In behalf of himself and his wife, R. F. Wilson instituted this suit against the West Texas Produce Company, the owner of the truck, to recover damages for the injuries so sustained by Mrs. Wilson, and from a

judgment rendered in plaintiff's favor for the sum of $17,000.00, the defendant has prosecuted this appeal.

"The recovery was based on findings by the jury of negligence on the part of Buck Crawford while driving the truck, which negligence the jury found was the proximate cause of Mrs. Wilson's injuries. The principal controverted issue determined by the trial court was whether or not at the time of the collision Buck Crawford was performing a service for the defendant in making a delivery of produce, as contended by the plaintiffs, or was he then engaged on a private mission of his own, namely, in going to a foot ball game, as contended by defendant.

"The evidence shows that the day on which the accident happened was Armistice Day, and the testimony introduced by the defendant was to the effect that Buck Crawford had been excused by the defendant from further service for the day and defendant had given him permission to use its truck in going to a foot ball game, to which he was going at the time of the accident.

"In answer to special issues, the jury found (1) that at the time of the collision Buck Crawford was making a delivery of produce for the defendant and he was not on his way to attend the foot ball game as alleged by the defendant; although prior to the accident Abe Fox, representative of defendant, had given his consent for Crawford to use the truck for the purpose of attending the foot ball game during the day. (2) Buck Crawford was guilty of negligence, which was the proximate cause of the collision, in driving the truck at a speed of 28 miles an hour, and in failing to keep a proper lookout to avoid a collision with cars traveling east on Third Street, as plaintiffs' automobile was traveling at the time of the accident, and plaintiff, R. F. Wilson, who was driving the automobile was not guilty of contributory negligence in the several particulars alleged by defendant.

"The proof showed that the West Texas Produce Company was a corporation engaged in the purchase and sale of fruit and other farm produce, and in delivering such produce sold to their customers they used a truck. That Buck Crawford was employed to drive the truck and make deliveries to customers of the produce sold. Abe Fox was employed by the defendant as house foreman and was in general charge of all the delivery business.

"The plaintiff introduced testimony tending to show that at the time of the accident Buck Crawford was out on a trip for the purpose of delivering produce for the defendant.

"The evidence tended to show that the accident happened between one and two o'clock of the afternoon of November 11th. After the collision a license plate which had been lost from the truck was picked up and the chief traffic officer of the city turned it over to two emergency officers, L. C. Wilkerson and L. W. Norwood, with instructions to investigate the

accident, especially in view of the fact that the driver of the truck had failed to stop and render aid to the injured persons and had apparently sought to evade discovery by the officers of his identity. Wilkerson and Norwood were introduced as witnesses in behalf of plaintiff and testified that about 2:30 o'clock of the afternoon of November 11th they went to the defendant's place of business, which they found then open and persons at work in the building; that two of the persons so found by them were Harry Bockstein, the president of defendant corporation, and Abe Fox, its house foreman. Those witnesses carried with them the license plate that belonged to the truck and made inquiry of the whereabouts of the driver of the truck. According to their testimony, Bockstein referred them to Abe Fox for the information desired. In that connection Wilkerson testified that he then applied to Fox for the desired information, his testimony being as follows:

" 'Well, I asked him about the truck, and who was driving it, and he told me. I asked him was he in there and he said no, that he was out on a delivery; that he had a few hurry up deliveries to make and wanted to go to a foot ball game that afternoon and he was going to let him off.'

"According to the testimony of those witnesses Abe Fox was requested to appear at the City Hall on the following morning and bring with him the driver of the truck. Both of those witnesses further testified that on the following morning, which was November 12th, Abe Fox and Buck Crawford did appear at the City Hall and there made statements substantially to the effect that at the time of the accident Buck Crawford was making some hurry up deliveries of produce for the defendant preparatory to going to a foot ball game, and at the time of the accident he did not know that any material injury had been done to plaintiff's car, but that he thought that his truck had merely scraped the fenders of plaintiff's car, and that was the reason he did not stop to ascertain whether any damage had been inflicted upon the plaintiff's car or injuries to its occupants.

"The defendant objected to the introduction of the testimony referred to above, on the ground that the purported statements of Abe Fox were hearsay and necessarily conclusions on his part as to what the driver of the truck was doing at a time when Fox was not present, and on the further ground that such statements by Fox were not made in the performance of any service on his part to the defendant and were made without any authority to bind the defendant by admissions against its interest.

"Harry Bockstein testified that Buck Crawford was in the employment of defendant company at the time of the accident. He further testified as follows:

" 'He had no special delivery route but worked wherever he was told. The truck he was driving on November 11th was one of our trucks. Abe Fox was working for the company at that time. He was house foreman.

His duties were to check and load trucks and to take care of the men. If there were any deliveries to be made he would check them in and direct them where to make the deliveries. He was in charge of the business. * * * Whenever Abe Fox checked out a truck with a load, it was his duty to see that the boy went and came back, and everything was all right. It was one of Abe Fox's duties to hire and discharge the men.'

"The testimony referred to above, of which complaint has been made, was offered by the plaintiffs in the development of their case originally as admissions against the interest of the defendant.

"On a former day of this term of court, assignments of error addressed to the submission of all the testimony referred to above were overruled and the judgment of the trial court affirmed.

"In appellant's motion for rehearing, the same asisgnments are again urged, and in view of the importance of the questions and of the fact that we are not thoroughly satisfied with our rulings on those assignments, we deem it advisable to certify to your Honors the questions whether or not the assignments of error referred to above should be sustained either in whole or in part."

Among other reasons, it is contended that the statements and declarations of Abe Fox are admissible upon the ground that they belong to that class of cases involving a continuing transaction or responsibility and where the adverse party applies to the officer or agent of the corporation having the matter in charge for relief or information. As shown by the certificate aforesaid, the evidence discloses that the officers investigating the collision between the automobile and truck went to the place of business of the West Texas Produce Company in a short time after the collision and carried with them the license plate that belonged to the truck and made inquiry of the whereabouts of the driver thereof. Bockstein, the president of the corporation, referred them to Abe Fox, who was house foreman of the company and in charge of the business, and whenever he checked out a truck with a load, it was his duty to see that the driver went and came back. It was one of Abe Fox's duties to hire and discharge the men.

The opinions and authorities lay down the well recognized rules which govern agents and officers of corporations and when their acts, statements or declarations are competent evidence against the corporation.

In the case of Xenia Bank v. Stewart, 114 U. S., 224, 5 S. Ct., 845, 847, 29 Law Ed., 101, the Supreme Court of the United States approved the following rule:

"Whatever an agent does or says in reference to the business in which he is at the time employed and within the scope of his authority, is done or said by the principal, and may be proved as if the evidence applied personally to the principal. American Fur Co. v. United States, 2 Pet., 358."

Again the Court in the same opinion said:

"The declarations made by an officer or agent of a corporation, in response to timely inquiries, properly addressed to him and relating to matters under his charge, in respect to which he is authorized in the usual course of business to give information, may be given in evidence against the corporation. Bank of Monroe v. Field, 2 Hill, 445; McGenness v. Adriatic Mills, 116 Mass., 177; Morse v. Connecticut River Railroad Co., 6 Gray, 450; Abbot, Trial Evidence, 44."

The last rule laid down by the Supreme Court of the United States in the foregoing opinion is adopted as a part of the text in 3 Fletcher Cyc. Corp., pp. 3343, 3344, sec. 2166, which reads as follows:

"As in case of other agents, authority to make representations or admissions may be implied from an express authority to do some act or to act in some capacity. Thus it is said by the Supreme Court of the United States that 'the declarations made by an officer or agent of a corporation, in response to timely inquiries, properly addressed to him and relating to matters under his charge, in respect to which he is authorized in the usual course of business to give information, may be given in evidence against the corporation.' Familiar examples are found in railroad companies where such positions as baggage master, ticket agent, station or freight agent, conductor, sleeping car porter, etc., generally carry on their face the power to make statements binding on the company as to matters within their duties, in response to questions. So a telegraph operator may agree to notify the sender whether a telegram was delivered, and he binds the company by his statement that it was delivered."

Jones Commentaries on Evidence (2d Ed.), vol. 2, sec. 980, p. 1800, says:

" 'When are the acts, statements, or declarations of an officer of a corporation competent evidence against the corporation?' asks the Minnesota court, and answers: 'Such statements are admissible upon the theory of agency. They are competent and admissible as against the corporation only when made in the course of the performance of their authorized duties as agents, so that the statements constitute a part of their conduct as agents—a part of the res gestae.'

"Corporations must, of necessity and from the very nature of their being, deal through agents; but, as in the case of an ordinary individual, they cannot, either in law or in common fairness, be held bound by every unauthorized admission of such agents. In a recent Texas case the law is thus expressed:

" 'According to the great weight of authority, the same rule is applied to the competency of the declarations of executive officers, managers, and general agents of a corporation when such declarations are sought to be used against the corporation they represent. The apparent scope of their authority is broader than in case of special or ordinary agents, but their declarations, to be competent as evidence against the corporation repre-

sented by them, must nevertheless be made while acting within the scope of such apparent authority and in connection with the performance of some duty to which such declarations are pertinent.' Southern Surety Co. v. Nalle & Co. (Tex. Com.), 242 S. W., 197."

In the case of Southern Surety Co. v. Nalle & Co. (Com. of App.), 242 S. W., 197, in an able and exhaustive opinion rendered by Judge Gallagher, which was adopted and entered as the judgment of the Supreme Court, in discussing the power of an officer to bind the corporation by statements or declarations, it is said:

"There are, however, a few authorities presented in this connection by defendants in error which support, or tend to support, the theory that a managing officer or agent of a corporation is its alter ego, and that his declarations, whether made casually or in line with his duties, whether connected in time or place with the matter to which they relate, or entirely ᵓdissassociated therefrom, are competent evidence against the corporation. Texas Standard Cotton Oil Co. v. National Cotton Oil Co. (Tex. Civ. App.), 40 S. W., 159; Booker-Jones Oil Co. v. National Refining Co., 63 Texas Civ. App., 142, 131 S. W., 623, 132 S. W., 815; Garretson v. Merchants & Banker's Ins. Co., 92 Iowa, 293, 60 N. W., 540; Krogg v. Railroad, 77 Ga., 202, 4 Am. St. Rep., 79; 2 Wharton on Ev., sec. 1177; and 4 Thompson on Corporations (1st Ed.), sec. 4915 —are among the authorities so cited. Some of these cases come, at least partly, within the application of the rules above announced, and the same may be said of the cases cited by the distinguished authors above referred to in support of their respective texts. However, in the 2 Edition of Thompson on Corporations, the subject of declarations of officers and agents is treated in volume 2, section 1620 et seq., and the rules there announced are in harmony with the authorities above quoted, and made the basis of our holding in this case. The cases holding the extreme doctrine that a managing officer or agent of a corporation is its alter ego, and that his declarations, whenever and wherever made, are competent evidence against the corporations, are against the overwhelming weight of authority."

In the case of Liner v. United States Torpedo Co. (Com. of App.), 16 S. W. (2d) 519, the court says:

"We are of the opinion we erred in our former decision in reversing the judgment of the Court of Civil Appeals, wherein it remanded the cause to the trial court. We held that the statement of the employe Blair as detailed by the witness Mims some time after the explosion occurred was not a part of the res gestae, but that it was nevertheless admissible because he was the company's representative having in charge the work of shooting the well. This was error. The admissions of a representative of another, under the circumstances such as these, are admissible only when they constitute a part of the transaction to which

they refer. In other words, when they are a part of the res gestae. San Antonio & Aransas Pass Ry. Co. v. Robinson, 73 Texas, 277, 11 S. W., 327; Gulf, Colorado & Santa Fe Ry. Co. v. York, 74 Texas, 364, 12 S. W., 68; Waggoner v. Snody, 98 Texas, 512, 85 S. W., 1134; Southern Surety Co. v. Nalle & Co. (Tex. Com. App.), 242 S. W., 197."

Tested by the foregoing rules applicable to the power of agents or officers to bind the corporation by their statements or declarations, we are of the opinion, by reason of the position held by Abe Fox with the West Texas Produce Company and the authority exercised by him at the time, that the statements or declarations made by him to the officer or officers at the place of the company in a short time after the collision, in answer to timely inquiries made by the officers for information concerning the truck and the driver thereof, as shown by the certificate aforesaid, are admissible in evidence as against the West Texas Produce Company. The statements of Abe Fox so certified reads as follows:

"Well, I asked him about the truck, and who was driving it, and he told me. I asked him was he in there and he said no, that he was out on a delivery; that he had a few hurry up deliveries to make and wanted to go to a football game that afternoon and he was going to let him off."

Keeping in mind the distinction made by the foregoing rules, we are furthermore of the opinion that the statements and declarations of Abe Fox and Buck Crawford made to the officers at the city hall the next morning after the collision of the truck and automobile, as contained in the certificate aforesaid, violate the foregoing rules and are incompetent and inadmissible in evidence as against the West Texas Produce Company.

We therefore recommend that the answers to the questions certified be made as above indicated.

The opinion of the Commission of Appeals answering the certified questions is adopted and order certified.

C. M. Cureton, Chief Justice.