## DIXIE MOTOR COACH CORPORATION v. MEREDITH.

### No. 4074.

Court of Civil Appeals of Texas. Texarkana.

Dec. 24, 1931.

Rehearing Denied Jan. 7, 1932.

Cunningham & Lipscomb, of Bonham, for appellant.

Fred S. Rogers, of Bonham, for appellee.

LEVY, J.

The appellee brought the suit to recover damages for personal injuries received by him and occasioned to his automobile through alleged negligence of appellant. In keeping with the verdict of a jury upon special issues, a judgment was rendered in favor of the plaintiff. Upon motion for new trial the item of $175 as damages to the automobile and the items of $75 for doctor's bill and $25 for medicine were each remitted, leaving the item of $1,250, the amount for personal injury, as the damages adjudged in favor of the plaintiff.

On November 16, 1930, about seven o'clock, p. m., the plaintiff sustained injuries as well as injuries to his automobile when the Ford automobile he was driving west and the appellant's passenger bus going east collided upon a one-way bridge located at a point on highway No. 5 between three and one-half and four miles west of Bells, Tex. At the point of collision, the highway going west runs down a steep grade in a nearly straight direction to a one-way bridge across a creek. The highway, going east, runs down a steep grade, but with several curves in it, to the one-way bridge. At the bridge, "the right hand side of the road borders on a deep gulch before you get to the bridge and that gulch is right along by the side of the bridge on both sides and the creek is below, approximately fifteen or twenty feet." Appellee reached the bridge and was going across it when the passenger bus struck his Ford automobile, causing personal injury to appellee and his automobile. The evidence of the driver of the passenger bus is explanatory of the situation in suit.

The driver testified: "I suppose it was about the 16th day of last November when I met Mr. Ed Meredith there on the bridge. I was coming east, driving a fifteen-passenger Buick bus. There is a difference between the length of that bus and the ordinary automobile, but the width of it is about the same. I got the bus at Sherman and was taking it to Paris over Highway No. 5. I went over to Sherman to put a drum on it because the drum would get stuck and the brakes would get too hot and stick to the drum. The drum is on the wheel that the brakes work on, and the band clamps around the drum and if they get too hot they stick. They were sticking on the bus wheels and had to be taken off and new ones put on. I remember the occurrence of the collision of my bus and the automobile of Mr. Meredith. I don't know much about the road there, but the best I remember, it has a crooked hill on the one side and a straight hill on the other side. It is a pretty good hill on the side that Mr. Meredith was coming down. The hill on the west side was a crooked hill, it was an 'S' shaped, curved hill. As you were coming from the bridge west, it would be something like near 300 yards before the road makes a turn which would obscure the view from the bridge. * * * When I saw the automobile, lights were on it. After you turn the curve going down east towards Bonham, part of the land west of the bridge is pretty level. I believe the hill on the east side of the bridge is a rise all the way from the bridge on up to the top. I was going towards east and was on the west side of the bridge. Mr. Meredith was coming from the east going west and was on the east side of the bridge. I was in second gear all the way coming down the hill until I got pretty close to the bridge. When I got in fifteen or twenty feet of the bridge I went into low gear in order to slow my bus down. I saw Mr. Meredith was not going to stop, I didn't think he was, so I was doing my best to stop on the bridge. I was on the bridge before Mr. Meredith's car. This collision happened about the center of the bridge. I was on the right hand side of the highway as I came to the bridge and as I went on the bridge. * * * The brakes on my bus were not very good, we had brakes on it but they were not as good as they should have been and that is the reason the bus was taken out

of passenger service. That is the reason I was taking it back to Paris for adjustment, on account of the brakes sticking. I was taking the old passenger bus to Paris for repairs. The Dixie Motor Coach Corporation sent me over there to get the bus and carry it to the Paris shop for repair. The bus had brakes on it but they were not very good."

The testimony of Mr. Meredith is similar to that of the bus driver, in describing the roadway and the approach of the two vehicles to the bridge. Plaintiff testified, though, that he had partly passed over the bridge when the bus struck his automobile. He said his "front wheels were going off the bridge" when the passenger bus struck his automobile.

The case was submitted to the jury on special issues and they made answer to the questions submitted that: The defendant's bus was not equipped with adequate brakes, which was an act of negligence and a proximate cause of the collision; that the bus attempted to enter upon the bridge before the plaintiff had passed over the bridge and that this was negligence, and a proximate cause of the injury; that the plaintiff suffered damages through personal injuries to the amount of $1,250. The jury further made answer to the questions submitted; that the plaintiff was not operating his automobile at a rate of speed in excess of thirty-five miles per hour, but was operating it at a rate over fifteen miles an hour, but in so doing was not guilty of negligence; that the plaintiff did not sound his horn and was not guilty of negligence in failing to do so; that plaintiff did not fail to keep a lookout ahead such as a person of ordinary care would have done under the circumstances.

The plaintiff pleaded negligence substantially as submitted to the jury. The defendant pleaded contributory negligence in the details: Of plaintiff's operating his automobile in excess of thirty-five miles an hour; in not slowing down to a speed not exceeding fifteen miles an hour in undertaking to pass the motor bus; in operating his automobile without adequate brakes in good working order; in failing to keep a lookout ahead; in failing to apply his brakes in time to avoid a collision.

The jury made answer of "No" to the following question: "Question 25: Did Meredith, upon approaching the bridge, fail to keep the lookout ahead that a person of ordinary diligence and care would have kept under the same or similar circumstances?"

The complaint is that the answer is contrary to the great weight and preponderance of the evidence. It is concluded that the verdict of the jury should not be disturbed.

■■■ The errors on appeal relate to the introduction of evidence and the manner of submitting special issue No. 22. Question No. 22, which appellant objected to as being erroneous in using "proximate" instead of "contributing," read: "Was such negligence on the part of the plaintiff a proximate cause of the collision?" The jury did not make answer thereto. The preceding question, to which the jury answered "No," reads: "Question No. 21: Was the omission to sound the horn negligence on the part of the plaintiff?" Question No. 20, to which the jury answered "Yes," reads: "Do you find that plaintiff did not sound his horn as he approached the motor bus immediately prior to the time of the collision?" The precise instruction complained of was erroneous, as the appellant would not legally be liable in damages if the negligence of the plaintiff "contributed" to produce injuries. In the record, however, the error would not warrant a reversal, because the jury affirmatively found there was "no" negligence in the particular stated on the part of the plaintiff.

■ The plaintiff while a witness on the stand was asked the question: "What is your labor that you did prior to this accident—what was that reasonably worth?". The objection was that it was not the proper measure of damage. The answer, over the objection, was: "I was not a first class carpenter, but when I was helping the mechanic, work that I was doing couldn't have been gotten for less than $3.50 or $4.00 a day." The qualification appears in the bill that "plaintiff was awarded no damages for alleged decreased earning capacity." The assignment of error is overruled.

■■ The driver of the bus, as a witness, testified:

"Q. But you stated that you had to go down that hill in second? A. Yes.

"Q. And that you did not have any brakes —you told him (J. W. Bell) that in the drug store after that happened? A. I don't remember telling him that.

"Q. Well, you told him you did not have any brakes, didn't you? A. I might have, I don't remember it."

J. W. Bell, being called to the witness stand, testified:

"Q. What did he (the bus driver) say about his brakes? A. He just said that he could not stop the car. He said his brakes were bad, or something to that effect about his brakes and he couldn't stop his car."

The objections made to the evidence seemed to be that it was "prejudicial, not res gestæ and a conclusion." The evidence appears to have been admitted upon the ground of "for purposes of impeachment." It was not a disputed issue that the bus was driven down the hill by the driver "in second." The driver of the bus admitted and did not deny that element of fact. And neither did the bus driver seemingly deny that the brakes on the bus were defective and not in good condi-

tion. In this record, it was not an open but an undisputed fact that the brakes on the bus were in bad condition and defective. So the statement of Mr. Bell was not contradictory of the bus driver's testimony. And the introduction of the statements of the driver may not be regarded as error warranting reversal, for such statements partake of the nature of admissions merely of existing facts which throw light on the true state of facts. The inquiry was merely an inquiry about facts. The bus driver was charged by appellant with the responsibility of operating the bus on the particular occasion and his admission of the true fact concerning the mechanical condition of the bus was within the scope of his employment and accompanying his act in the course of the operation of the bus. Wherever what the agent did is admissible in evidence, then, as a rule, whatever he said on the subject while doing it is also evidence against the principal.

 The driver of the bus further testified:

"Q. And when you got in there (a drug store at Bells, Texas), in the presence of J. W. Bell, J. N. Ferguson and divers other persons (did) you tell them it was your fault, that you didn't have any brakes on that bus and you could not stop it—you said that didn't you? A. No, I did not tell them it was my fault at all."

J. N. Ferguson was then placed on the witness stand and testified:

"Q. I will ask you if the bus driver said that the collision was not Mr. Meredith's fault and that he did not have any brakes? A. The bus driver said he was going down in second gear and that his brakes were not working. He did not say whether he thought the wreck was his fault or not, he said he was going down without brakes and in second gear."

J. W. Bell testified:

"A. Well, he said that Mr. Meredith was not to blame for collision, but did not say who was."

The objection made to the testimony appears to be that it was prejudicial and an opinion of the witness upon the liability of the company which was incompetent evidence. The evidence seems to have been offered and admitted as part of the res gestæ and as affecting credibility of the witness. The evidence was clearly incompetent for the purpose of impeachment. Rwy. v. Adams, 44 Tex. Civ. App. 288, 98 S. W. 222. But it is believed the error should not, in view of the record, be considered as warranting reversal. The evidence objected to means and goes to the extent that the driver was unable to avert a collision because of the defective and bad condition of the brakes. The entire evidence in the record goes substantially to affirma-

tively establish such fact, independent of such statement. In the light of such circumstances surrounding the statement objected to, regarding it as an admission of fault on the part of the bus driver, such statement or admission was of very little value and without great inherent force as evidence.

The judgment is affirmed.