**BIG MACK TRUCKING COMPANY, INC.,**
Petitioner,

v.

**Lucy DICKERSON et al., Respondents.**

No. B–3520.

Supreme Court of Texas.

June 27, 1973.

Rehearing Denied July 25, 1973.

Fulbright, Crooker & Jaworski, James B. Sales and Arno W. Krebs, Jr., and Sim T. Lake, Houston, for petitioner.

Miller, Gann & Perdue, Jim M. Perdue and Robert A. Berry, Houston, for respondents.

SAM D. JOHNSON, Justice.

The wife and children of Willie Lee Dickerson have recovered damages for his wrongful death in an action against his employer, Big Mack Trucking Company, Inc. The court of civil appeals affirmed. 482 S.W.2d 1. We reverse.

Willie Dickerson and Ormand Leday were employees of Big Mack. Each was driving a truck-tractor pulling a flatbed trailer loaded with sheet steel across Texas from Eagle Pass to Arp. Both trucks stopped in Waco. Leday parked his truck fifteen to eighteen feet behind Dickerson's. Leday left his vehicle unattended. Dickerson got out of his truck and was standing behind his trailer with his back toward Leday's vehicle. Leday's unattended truck rolled forward striking Dickerson's trailer and crusing Dickerson between the two trucks. Dickerson was killed in the accident.

The plaintiffs first recovered workmen's compensation benefits. The present suit was then commenced against Big Mack and Leday. Plaintiffs asserted that the instant action was not precluded because Big Mack had withheld from Dickerson's wages the amounts necessary to pay workmen's compensation insurance premiums. At trial the jury found that Big Mack had withheld from Dickerson's wages the amounts necessary to pay the premiums for workmen's compensation insurance. The significance of that finding is found in Vernon's Tex.Rev.Civ.Stat.Ann. art. 8306, § 12g, which the courts below have held provides a right of action to recover actual damages for wrongful death against an employer who has so withheld, notwithstanding that plaintiffs have already recovered workmen's compensation benefits against the carrier. The jury further found that Leday was acting as an employee of Big Mack at the time of the accident, that Leday was guilty of two acts of negligence which also amounted to heedless and reckless disregard of the rights of others, and that those acts were proximate causes of the occurrence. The jury found actual damages in the aggregate amount of $220,000, but did not award exemplary damages.

After the verdict was returned, Leday was dismissed on plaintiffs' motion and judgment was rendered against Big Mack for $220,000.

Big Mack applied for writ of error on five points. The court of civil appeals has held against Big Mack on all points and we agree with that court's holdings on the first four. The first point denies that there is evidence to support the jury's finding that Big Mack "withheld." That point is considered to be without merit and is overruled without further discussion.

The second, third and fourth points challenge the lower courts' construction of Art. 8306, § 12g, which provides:

"It shall be unlawful for any subscriber or any employer who seeks to comply with the provisions of this law to either directly or indirectly collect of or from his employés by any means or pretense whatever any premium under this law or part thereof paid or to be paid upon any policy of such insurance under this law which covers such employés, or any intended policy of such insurance designed to cover such employés. If any such subscriber or any employer of labor in this State violates this provision of this law, then any employé or the legal beneficiary of any employé of such employer or subscriber shall be entitled to all the benefits of this law and in addition thereto shall have a separate right of action to recover damages against such employer without regard to the compensation paid or to be paid to such employé or beneficiary under this law. The asso-

ciation shall in no wise be responsible because of such separate action by such employé or beneficiary against such employer on such separate cause of action."

Big Mack first contends that "damages," within the meaning of § 12g, comprehends only those damages which are occasioned by the violation of § 12g, and, consequently, the plaintiffs could recover only the amounts wrongfully withheld, plus interest. Second, even if the right of action be one to recover damages for personal injury or death, the employer retains the common-law defense of fellow servant because that defense was not specifically abolished in the context of § 12g litigation. Third, it would be a violation of due process and equal protection of the law for the court to construe § 12g against the petitioner in the particulars mentioned above because the amount of penalty imposed by the statute would bear no reasonable relation to the gravity of the wrong done by violation of the statute. We believe those points have been correctly decided by the court of civil appeals.

■■■ On the first point, the phrase "without regard to the compensation paid . . . under this law" indicates that the Legislature anticipated a double-recovery objection to a § 12g suit; the Act then specifically answers that double recovery of the same elements of damage is permitted. On the second point, it would be fortuitous escape from the penalty if the employer should have the defense of fellow servant. On the third point, the penalty imposed is the same for all violators, i. e., he loses the immunity from suit provided by Art. 8306, § 3.

By its fifth point of error, Big Mack asserts that there is "no evidence" to support the judgment against it because all the evidence of Leday's negligence and proximate cause was hearsay as to Big Mack. *Leday did not testify. No attempt was made to explain or justify the failure to call Leday, his absence, or his failure to give testimony.* The plaintiffs' theory of liability was

predicated upon the fact that Leday's brakes were defective at the time he parked his truck. The only evidence tending to prove the circumstances of the accident or the elements necessary for plaintiffs' recovery came from two witnesses who could only testify what Leday had previously related to them. These two witnesses were Mr. David Stiles, the vice president of Big Mack, and Officer Henry Harwell, the investigating officer of the Waco Police Department.

Vice President Stiles testified that following the accident, Leday told him he had been having "air pressure troubles" and that he had not been maintaining the proper air pressure in his braking system. He further told Stiles that he had parked his truck behind Dickerson's truck, had gone off and left it and that when he returned he found the deceased crushed between the two trucks. In addition, Stiles, who was familiar with the proper operation of trucks, testified as to the way air brakes work on trucks generally. Stiles testified that if a truck was being operated under circumstances where the driver was having trouble with the brakes such as those related that it would be improper to park the truck on any kind of incline without scotching the wheels or putting it in gear.

The testimony of Officer Harwell was introduced by way of deposition. He testified that when he arrived that Dickerson was no longer there; that he had been removed by an ambulance. The two vehicles were still at the scene of the accident. Officer Harwell then related what Leday had told him: that he had been experiencing brake trouble with his truck in that the air pressure was running law, that he was the operator of the back truck, that he parked his truck approximately fifteen to eighteen feet behind the decedent's truck and that when he left his truck Dickerson was standing at the back of Dickerson's truck eating off of the trailer.

Respondents assert that in an action against a servant and master, the master

having been joined under respondeat superior, it is not necessary that the evidence proving the servant's negligence and proximate cause be competent evidence against the master in order to support a judgment against the master. The notion is that the master's derivative liability is imposed by law once the liability facts are proven by evidence competent against the servant. That proposition finds support in Madron v. Thomson, 245 Or. 513, 419 P.2d 611, 27 A.L.R.3d 953 (1969) and Grayson v. Williams, 256 F.2d 61 (10th Cir. 1958) and, in backhand fashion, A.L.I., Model Code of Evidence Rule 508(c) (wherein evidence admissible against the servant to prove his liability is said to be ipso facto admissible against the master).

▌ We cannot accept such a view. The suggestion is that with respect to proof of the servant's liability, which we deem an essential element of plaintiffs' *case against the master*, the master loses the protection of the hearsay rule. Any reason which suggests that the master should lose the protection of that rule would also militate against the master's right to offer contrary evidence, to cross-examine plaintiffs' witnesses, to object to evidence on grounds other than hearsay, or, indeed, even to plead the general denial which requires the plaintiffs to prove the servant's liability in the first place. Although we have found no Texas case specifically holding that evidence of the servant's negligence must be admissible against the master in order to sustain a judgment against the master, we believe that the unspoken principle was necessarily followed in Isaacs v. Plains Transport Co., 367 S. W.2d 152 (Tex.1963) and Waggoner v. Snody, 98 Tex. 512, 85 S.W. 1134 (Tex. 1905). *See* Annot., 27 A.L.R.3d 966 (1969).

Since the evidence of Leday's negligence and proximate cause must be admissible against Big Mack in order to support the

judgment against it, and since all evidence offered to prove those facts was hearsay, the question becomes whether the hearsay is admissible against Big Mack under any hearsay-rule exception known to Texas law.

▌ The court of civil appeals held that Leday's statements to Stiles qualify against Big Mack as admissions of a party.[1] The theory is that Big Mack authorized Leday to speak to Stiles about the accident in Waco, and when Leday spoke he voiced, in contemplation of law, the position of Big Mack. We cannot agree. An agent's hearsay statements should be received against the principal as vicarious admissions only when the trial judge finds, as a preliminary fact, that the statements were authorized. 4 Wigmore, Evidence § 1078 (3d ed. 1940); 2 McCormick & Ray, Texas Law of Evidence § 1164 (2d ed. 1956); Restatement (Second) of Agency § 286 (1958). The Restatement of Agency cautions that, in considering the breadth of an agent's authority when reporting details of an event to the principal, the court should notice the very likely limitation that the principal *intends* the agent's report to be made *only* to the principal or other person investigating the accident for the principal. Restatement (Second) of Agency § 287 and comments (1958); *see also* 2 Fletcher, Cyclopedia Corporations § 738 (1969). If there be any special facts to show that Big Mack authorized Leday to speak *to the world as well as to* Stiles, those facts have not been introduced and so we follow the Restatement and hold that the Stiles testimony is not admissible under the admissions exception. In so holding we do not adopt § 287 of the Restatement as a hard and fast rule, but only observe it to the extent that it creates a rebuttable presumption of lack of authority. Having taken this view, it is not necessary that we pass on the soundness of Metropolitan Life Ins. Co. v. Moss, 109 S.W.2d 1035 (Tex.

[1]. No doubt such statements are admissions of the party Leday, and so would be admissible over his hearsay objection.

The pertinent question under our holding above is whether they are also admissions of Big Mack.

Civ.App.—Amarillo 1937, no writ); and Supreme Lodge, Knights of Honor v. Rampy, 45 S.W. 422 (Tex.Civ.App.1898, writ ref'd).

■ The second theory of admissibility is that Leday's statements to Officer Harwell qualify as vicarious admissions. The Restatement rule noted above has no application since Officer Harwell was not investigating for the principal, Big Mack. Nevertheless, we must find that such statements were authorized by Big Mack, and in this inquiry we are mindful of the Wigmore-McCormick caveat against confusing the admissions exception with the res gestae, or spontaneous utterance, exception. *See* 4 Wigmore, *supra,* § 1078; 2 McCormick, *supra,* § 1164; Roush v. Alkire Truck Lines, 299 S.W.2d 518, 520 (Mo. 1957).

Of course, the authority to make admissions may be implied from express authority to do some other act. West Texas Produce Co. v. Wilson, 120 Tex. 35, 34 S.W.2d 827 (Tex.Comm'n App. 1931, opinion adopted). The question evolves, then, whether Leday's express authority to operate the truck may be a basis for implied authority to explain how the accident came to pass. Most authorities take the position that a driver's statements after an accident are not authorized by his employer. San Antonio & A. P. Ry. Co. v. Robinson, 73 Tex. 277, 11 S.W. 327 (1889); West Texas Produce Co. v. Wilson, *supra*; Luvual v. Henke & Pillot, Division of Kroger Co., 366 S.W.2d 831 (Tex.Civ.App.—Houston 1963, writ ref'd n. r. e.); Roadway Express v. Gaston, 91 S.W.2d 883 (Tex.Civ. App.—El Paso 1936, writ dism'd); Red Arrow Freight Lines v. Gravis, 84 S.W.2d 540 (Tex.Civ.App.—San Antonio 1935, no writ); Houston E. & W. T. Ry. Co. v. Lord, 290 S.W. 816 (Tex.Civ.App.—Beaumont 1927, no writ); Restatement (Second) of Agency § 288(2) and illus. 2 (1958); 12 Blashfield, Auto Law 3d § 434.3 (1969); 8 Am.Jur.2d, Automobiles and Highway Traffic § 968. In terms of strictly consensual authority, we believe the well-advised employer would generally not authorize the driver to speak in these circumstances. There is, moreover, no basis for a claim of apparent authority since all events operating to establish liability for the injury have occurred at the time the statements are made, and there can be no pertinent detrimental reliance upon the driver's statements. There is no reason peculiar to the case at bar why the general rule should not be followed.

Respondent assigns, as contrary authority, the cases of West Texas Produce Co. v. Wilson, 120 Tex. 35, 34 S.W.2d 827 (Tex. Comm'n App. 1931, opinion adopted); Dixie Motor Coach Corporation v. Meredith, 45 S.W.2d 364 (Tex.Civ.App.—Texarkana 1931, writ dism'd); Firestone Tire & Rubber Co. v. Rhodes, 256 S.W.2d 448 (Tex.Civ.App.—Austin 1953, writ ref'd n. r. e.); J. Weingarten, Inc. v. Reagan, 366 S.W.2d 879 (Tex.Civ.App.—Waco 1963, no writ). We do not think those cases require a different result. In *Wilson,* the president of defendant corporation directed the investigating officers to question the foreman on the day of the accident, and so the foreman's responses were expressly authorized. The statements the driver made the following day were not authorized and so were excluded. In *Meredith,* the bus driver's post rem hearsay declarations were admitted, but the court of civil appeals was of the opinion that there was no real dispute on the issue to which the hearsay was relevant (i. e., defective brakes); the court's holding is only a holding that, if error, it was harmless. 45 S.W.2d at 367. The opinion in *Rhodes* indicates that the witness never answered the question which sought to elicit the driver's hearsay declarations; the court there held that "[a]n unanswered question, although improper and duly excepted to, is not sufficient grounds for reversal of the case." 256 S. W.2d at 453. In *Reagan,* the hearsay declarations of an employee of the grocery store was admitted to show that the employee had knowledge of the dangerous condition; its admission does not appear to

have been challenged upon the basis that it also proved the fact of the dangerous condition. That is a viable distinction, and could properly have controlled the decision of that case.[2] *See* Annot. 141 A.L.R. 704 (1942).

■ The final theory of admissibility advanced by respondents is that Leday's statements to Officer Harwell were spontaneous exclamations. In order to so qualify, there must be some evidence of facts from which a trial judge might infer that the declarant (Leday) was in such an emotional state that he was incapable of that deliberation which might permit fabrication. Spontaneity is the essence of the exception. 1 McCormick & Ray, Texas Law of Evidence §§ 913, 915, 917. The only evidence which tends to show the time elapsed between the exciting event (Leday's discovery of the accident) and Leday's statements to Officer Harwell is that when Harwell arrived, the ambulance had already taken Dickerson away. That alone is clearly insufficient, and it is unaided by any mention by Officer Harwell that the declarant appeared to be distraught. At all events, from the following colloquy it appears that the trial judge did not find the preliminary facts constituting a spontaneous-exclamation predicate, but rather allowed the Harwell deposition into evidence only as an admission.

"MR. WINDHAM: Let the record show that prior to the introduction of the direct interrogatories of the officer, defendant Big Mac [*sic*], Incorporated, would like to object to Direct Interrogatories 12, 13, 14 and 15 on the basis that it's hearsay and on the basis that the answer to No. 15 is inadmissible. He has not qualified himself as an expert witness and lays no predicate for his opinion.

"THE COURT: 12, 13, 14, and 15?

"MR. WINDHAM: Yes, sir.

"THE COURT: I will sustain as to 15, and I will sustain his objections to 12, 13 and 14 as far as Big Mac is concerned.

"MR. PERDUE: Judge, let me say on the record insofar as that is concerned I understand the Court's ruling. However, we are in a difficult position, and I just want to make it clear.

"Should the jury, for example, declare and find as part of its verdict that Ormand Leday was an employee of Big Mac at the time this happened, the statements obviously would be within the orbit of his authority to make them.

"THE COURT: Yes, sir, but how can I rule—

"MR. PERDUE: I realize that, and that's why I don't mind letting him reserve his objections or make them and have the Court rule. I just want to point that out because we are in a—

"THE COURT: Let me just say out of the presence of the jury that his objection is good as far as Big Mac Trucking is concerned if Leday is not an employee of Mac Trucking, and in that event it will be admissible only as against Ormand Leday.

"MR. PERDUE: That's fine.

"MR. WEATHERLY: If he is an independent contractor, it would just be admissible against Ormand Leday?

"THE COURT: Right."

2. We are aware that issue #2 inquired if Leday knew his brakes were defective, but an essential subsidiary question is whether the brakes were, in fact, defective. Evidence admitted under a special rule-of-necessity, which liberalizes the admissions exception in a proponent's effort to prove knowledge of a fact, cannot be used by indirection to prove existence of the fact itself. *See* Fenner v. American Surety Co. of New York, 97 S.W.2d 741 (Tex.Civ.App.—Dallas 1936, affirmed 133 Tex. 37, 125 S.W.2d 258 (1939). 6 Wigmore, Evidence § 1790 (3d ed. 1940); 1 McCormick & Ray, Texas Law of Evidence § 799(c) (2d ed. 1956).

After that ruling by the trial judge, the only basis upon which we could hold the Harwell deposition admissible is to hold that Leday's hearsay declarations were "spontaneous" as a matter of law. That we cannot do.

 A great measure of trustworthiness stems from the fact that Leday's hearsay declarations were against his pecuniary interests. Our evidence law acknowledges this in the declarations against interest exception to the hearsay rule. 2 McCormick & Ray, Texas Law of Evidence § 1002 (2d ed. 1956). However, it has long been the position of Texas jurisprudence that there should be a special *need* to rely on such hearsay, and consequently we require proof that the declarant was not available to testify at the trial. 2 McCormick, *supra*, § 1003. The instant record is wholly without proof of any attempt to establish that the hearsay declarant (Leday) was unavailable to testify. The exception therefore does not apply.

Reversal must follow our conclusion that there is no evidence competent against Big Mack to prove the fact essential to the theory of recovery submitted to the jury, i. e., that Leday's brakes were defective. We must therefore consider what further order would be proper. It appears to us that this case has not been fully developed in two respects. First, the proof as to whether Big Mack deducted from Dickerson's earnings money for workmen's compensation premiums is unsatisfactory at best. Second, the proof as to whether or not Leday's brakes were defective does not appear to have been fully developed; it may or may not be that competent proof may be made on whether the brakes on his truck were defective, whether Leday said they were, and under what circumstances.

Accordingly, it appears to us that under Rule 505, Texas Rules of Civil Procedure, the cause should be remanded in the interest of justice so that the facts in these important aspects of the case may be more fully developed. Turner v. Texas Co., 138 Tex. 380, 159 S.W.2d 112 (1942). *See* Calvert, In the Interest of Justice, 4 St. Mary's L.J. 291 (1972).

The judgments of the courts below are reversed, and the cause is remanded to the district court for a new trial.

REAVLEY, J., concurs in the result.