### LOU CASNER v. THE STATE.

No. 2100. Decided May 1, 1901.

**1.—Murder—Evidence—Declarations by Deceased.**

On a trial for murder, which grew out of a difficulty concerning the putting up of a fence, it was competent for the State to prove by a witness what the deceased told him to tell the defendants when they saw them approaching, the witness having communicated to defendants what deceased had told him before the shooting occurred.

**2.—Same—Charge—Provoking Difficulty.**

On a trial for murder, if it appears that defendant made a murderous assault upon the deceased, this is, in contemplation of the law, at least an assault with intent to murder, and can in no manner be properly characterized as "provoking a difficulty;" and in such case it is error for the court to charge upon the law with regard to "provoking a difficulty," as contemplated in our statutes. To actually begin a difficulty by an overt act is not provoking a difficulty.

Appeal from the District Court of Stonewall. Tried below before Hon. P. D. Sanders.

At the November term of the District Court of Haskell County Lou Casner was indicted by the grand jury charging him with the murder of Tom Pitner in Haskell County on the 5th day of September, 1899. The venue was changed to Stonewall County, and at the October term, 1900, the case was tried in Stonewall County, resulting in a verdict of guilty of murder in the first degree and assessing his punishment at confinement in the penitentiary for life.

John Casner and the defendant, Lou Casner, were father and son. The deceased, Tom Pitner, was a stepson of John Casner by a second marriage. John Casner's wife, Pitner's mother, was dead, and he lived with the defendant, Lou Casner, on the John Casner homestead. The Welsh place claimed by Pitner joined the Casner place on the north. On the east of the Welsh and Casner places was the Blunt pasture. The west fence of the Blunt pasture forming the east fence of both the Welsh and Casner places. Kit Parker was occupying the Welsh place as the tenant of Pitner. Foster & Schott were agents for the Blunts, the owners of the Blunt pasture, and had leased it to John Casner, and he and defendant were holding it under said lease at the time of the killing of Pitner. The contract under which they held provided as a part of the consideration that they should move the west line of the Blunt pasture back onto the Chance survey and repair the fence. This west line of fence was partly down at the time of the difficulty.

The deceased, Tom Pitner, had filed a civil suit against the Casners claiming an interest in the Casner estate as heir of his mother, the deceased wife of John Casner, and which suit was still pending. The evidence shows that both parties had made serious and deadly threats against each other before the killing.

This is a companion case to the case of John Casner v. State, 42 Texas Criminal Reports, 118, and the facts in the two cases are in the main identical.

No further statement required.

*J. M. Morgan, B. B. Greenwood,* and *Ben M. Terrell,* for appellant, filed an able brief in the case.

*Rob't A. John,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at confinement in the penitentiary for life.

This is a companion to the case of Casner v. State, reported in 42 Texas Criminal Reports, 118. The statement of facts as contained in the last named case is alike in all material respects to the facts adduced on the present trial. As stated in that case, there was only one eyewitness, to wit, Kit Parker. In the view we take of the case, it is only necessary to pass upon two questions.

The State asked the witness Kit Parker what deceased told him to

tell the Casners. Appellant objected because immaterial, irrelevant, and hearsay; that the State could not be allowed to show by the proposed testimony the condition of the deceased's mind; and is a self-serving declaration from deceased. The court overruled the objections, and permitted the witness to answer as follows: "When we saw the Casners coming, deceased told me to go down and meet them, and to tell them that Walter Scott told deceased to put up the fence." The court appends to this bill the following explanation: "The statement of the witness Parker as to what deceased told witness to tell the Casners, and which is complained of in this bill, was made by deceased a few minutes before the shooting commenced, and after deceased saw the Casners coming towards him." From the foregoing recital of the contents of the bill of exceptions presenting this matter, it does not appear that the request made by deceased of the prosecuting witness Parker to convey said information to the Casners was not so conveyed. If it was so conveyed, then the testimony of the statement of Parker to deceased would be admissible. If it was not so conveyed, it is not admissible. Johnson v. State, 22 Texas Crim. App., 206; Brumley v. State, 21 Texas Crim. App., 222. The second assignment necessary to be revised is the action of the court charging on the law of provoking the difficulty. Appellant insists there was no evidence calling for such charge; that neither defendant nor John Casner did any act calculated to provoke a difficulty. In view of the decision in John Casner v. State, 42 Texas Criminal Reports, 118, the fact that the court charged on provoking the difficulty in this case is a little remarkable. As indicated above, the fact of the case now under consideration and that of John Casner v. State, supra, are identical in every material respect; and in that case we said: "In view of another trial, we feel constrained to pass upon the court's charge in another particular. The record before us does not require the court to charge on the law of provoking the difficulty." After a thorough reading of the facts of the case again, we have had no occasion to change the statement in that opinion. If the testimony of the State be true,—and upon that the law of provoking the difficulty must be found in this case, if based upon anything,—there is nothing suggesting appellant provoked or attempted to provoke deceased to a difficulty. "Provoke," as ordinarily understood, means to excite to anger or passion; to exasperate; to irritate; to enrage. Cent. Dic. This is the meaning of the word under the statute authorizing courts to charge the law of provoking the difficulty. Now, if appellant made an assault upon deceased, either with express or implied malice, intending to kill deceased, he would be guilty of murder in the first or second degree; and the mere fact that he made such an assault is not provoking the difficulty within the contemplation of law. Kit Parker, the only eyewitness, in his testimony, states the difficulty commenced as follows: "John Casner and appellant walked up within about seventy-five yards of where deceased was. John Casner got over on the west side of the fence and was walking in a northwesterly course. Appellant got down on his

knee and leveled his gun towards deceased and hallooed for deceased to get out from behind the wagon. Appellant then got up and ran behind some mesquite trees a short distance. Just before he got behind the trees, deceased fired at him; then appellant fired at deceased; then a general shooting occurred between deceased, appellant, and appellant's father." It seems the learned judge believed the fact that appellant began the difficulty is "provoking the difficulty" within the contemplation of the law. If appellant had walked up to deceased, armed with a gun, and abused deceased, or did some act calculated to exasperate him, and to call from deceased some character of resentment, then these acts would be provoking the difficulty. But no such acts are in this record.

With the exception indicated, the trial court's charge is unobjectionable. We have passed upon all the criticisms of the same, and find them without merit. But for the error discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*