JOHN WOOD v. THE STATE.

No. 5384.   Decided May 7, 1919.

1.—Manslaughter—Evidence—Declarations of Co-conspirator.

Upon trial of murder and conviction of manslaughter, it was reversible error to introduce in evidence the declarations of defendant's father some-

time after the homicide, that he and his son, the defendant, had accomplished just what they went there to do, and which was in the absence of the defendant and after any conspiracy could have existed. Following Drake v. State, 29 Texas Rep., 265.

### 2.—Charge of Court—Burden of Proof—Self-Defense.

Where, upon trial of murder and conviction of manslaughter the issue of self-defense was made prominent by the facts, and the court's charge limited the issue of criminality to the exclusion of self-defense as between murder and manslaughter, the same was reversible error, and placed the burden of proof upon defendant.

Appeal from the District Court of Hill. Tried below before the Hon. Horton B. Porter.

Appeal from a conviction of manslaughter, penalty, two years in the penitentiary.

The opinion states the case.

*V. L. Shuttleff* and *B. Y. Cummings,* for appellant.

*E. A. Berry,* Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant's conviction was for manslaughter with the minimum punishment.

In a general way the case may be thus stated: Deceased and appellant had married sisters. On account of insulting conduct and remarks made by deceased towards and about appellant's wife, and threats made by deceased against appellant, ill-feeling was engendered. They both lived in the country, and were farmers. Their trading point was Mt. Calm, in Hill county, where they both were accustomed to go at their pleasure. On the day of the killing appellant, his father, and brother-in-law went to Mt. Calm, and to a blacksmith shop in the town for the purpose of having the horses of appellant's father shod. While there one of the crowd borrowed a whetstone from the blacksmith to sharpen a knife. The parties separated, the father going away first from the blacksmith shop, and later the defendant, and met upon one of the main streets of the town and were standing near a drugstore. The deceased drove into town and passed them and went some distance up the street. Appellant left the corner of the street where he was standing, and as he was traveling along the sidewalk he and deceased met at the corner of the street. A fight ensued and deceased was killed. Appellant was badly beaten and some of his teeth knocked out. Others became engaged in the difficultly, and brick-bats seemed to have been used rather freely. Appellant bled freely from the wounds he received, and especially from that in the mouth which knocked out his teeth.

A bill of exceptions recites the fact that appellant was placed in jail in Hill county, and something like two weeks, or a few days

after being incarcerated his father was seeking to get him out on bail, and asked the witness Henry Thomasson to sign such bail bond, which Thomasson did. While defendant's father was testifying the State, upon cross-examination, asked him if he had not visited Thomasson to induce him to sign his son's bail bond, and if in that conversation he had stated to Thomasson that "they had accomplished just what they went there to do." Various objections were urged to this, among other things, that it was not in the presence of appellant, it was some days subsequent to the transaction, and even if the State sought to prove an acting together or a conspiracy to bring about trouble between deceased and defendant, that the purpose of the agreement had been accomplished, and the statement of a co-conspirator could not be used against appellant. Appellant's father denied making such statement. Subsequently, the State introduced Thomasson, and the following occurred: "I will ask you to state whether or not he (appellant's father) stated to you on that occasion that they had done just what they intended to do?" Various objections were urged. In answer to the question the father said that he had not made the statement, and the witness Thomasson was placed on the stand to impeach him, and stated that appellant's father stated "something to that effect, yes sir." This testimony was inadmissible for the reasons stated. The State clearly would not have been authorized to introduce this as °original testimony, and under the rule laid down in Drake v. State, 29 Texas Crim. App., 265, the evidence would have been inadmissible from that view point. The question assumed that a conspiracy existed between the parties to kill deceased, and this statement, if such conspiracy did exist, was made by a co-conspirator after the completion of the enterprise and termination of the conspiracy. Such acts and declarations are inadmissible. See 1 Branch's Ann. P. C., p. 354, Sec. 695, where a great number of cases are collated.

The court submitted murder, manslaughter, and in a general way self-defense. Following these charges the court gave this instruction:

"Where a defendant accused of murder seeks to justify himself on the ground of insulting words or conduct to a female relative (of defendant's) as a justification of the offense, you are charged that if the defendant believed the report, the same was to him real, and if acting on such belief, and laboring under passion which reasonably rendered his mind incapable of cool reflection he killed the deceased upon their first meeting after being apprised of the insult, if any, he would be guilty of no higher offense than manslaughter. But on the other hand, although you may believe from the evidence that the defendant had been informed of insulting acts or conduct on the part of the deceased toward defendant's wife, and although you find that he believed such to be true, yet if you

further find that at the time of the killing his mind was capable of cool reflection, then the offense, if any, would not be manslaughter, but murder.''

The court, omitting this charge, had given a reasonably fair instruction to the jury, but this charge is a resume of the two criminal phases of the transaction, and places the burden on the defendant · to prove a justification of manslaughter in order to defeat murder, and then, in substance, instructs the jury if this has not been done he would be guilty of murder. If the issue had been alone between murder and manslaughter, there would have been less harm embodied in the charge, but the issue of self-defense was made prominent by the facts, and the charge here complained of limits the issue of criminality to the jury to the exclusion of self-defense as between murder and manslaughter. Where the facts raise the issues, the accused is entitled to the benefit of the doubt on the facts as between the degrees of homicide and self-defense. If the jury believed appellant guilty, and had a doubt as to whether he was guilty of murder or manslaughter, he was entitled to the benefit of the doubt, and a conviction for manslaughter should have followed. But he is also entitled to self-defense as against either phase or both phases. The burden is not on the defendant but on the State to show criminality. Insulting conduct on the part of the deceased and threats to take the life of appellant were prominent features in the evidence. The jury should not have been relegated to a choice between the two degrees of culpability to the exclusion of resolving the doubt in favor of the defendant as between the two degrees, and in his favor on the theory of self-defense. This charge submitted only the question of guilt as between the degrees, and instructed the jury that appellant sought to justify as against murder by claiming insulting conduct towards his wife. This we think was rather an assumption that appellant was guilty of one phase of the homicide, murder or manslaughter, to the exclusion of his theory and testimony supporting self-defense. We are of opinion this charge is of such a harmful nature that it requires a reversal of the judgment. Exceptions were properly and timely taken to the charge. The first objection to it was that same placed the burden upon defendant to establish at the time of the killing that defendant's mind was incapable of cool reflection. Again, it was objected that the charge wholly ignored the right of the defendant to act in self-defense and in effect amounted to a suggestion to the jury to convict defendant of manslaughter. The charge as we view it from any standpoint, as given, was erroneous, and induced the jury to ignore defendant's rights of self-defense and convict of manslaughter.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*