BOYD SHANNON v. THE STATE.

No. 13857. Delivered May 6, 1931.

The opinion states the case.

*C. C. McDonald,* of Wichita Falls, for appellant.

*Williams & Bell,* of Childress, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for four years.

Appellant and deceased, Troy Taylor, had been friends. On the day of the homicide they had attended a baseball game. Deceased and one Inman made a bet with other parties, appellant holding the stakes. Appellant placed the money in his outside shirt pocket. Inman slipped the money out of appellant's pocket unknown to appellant. After the game appellant was called upon for the money, and, believing that deceased had slipped it out of his pocket, he started to feel about deceased's person. Deceased became angry and seemed to think that his honor had been questioned. Inman produced the money and gave deceased his half of the winnings. Appellant got in his car and started to leave. Deceased pursued him around the public square and forced appellant's car into the curb. He threatened to kill appellant. Being in fear of deceased, appellant secured a pistol and bought some shells at a hardware store. He also got one Goodwin to go to the home of deceased to see if he could explain matters and get deceased in a good humor with him. Appellant then went to the city marshal and told him of the trouble he was having with deceased. He told the marshal that he was going to leave town for a few weeks in order to avoid trouble with deceased. He asked the marshal to go with him to his home in order that he might get his grip and clothes for the journey. The marshal complied with appellant's request. He did not enter the house, but left as appellant was in the act of unlock-

ing his front door. The killing occurred immediately upon appellant entering his house. Deceased had gone to appellant's home and awaited appellant's arrival. The screen was cut and a window had been raised. Appellant was unaware that deceased had secreted himself behind the front door when he entered the house. As appellant entered the house deceased assaulted him and brutally beat him with the handle of an andiron. In the struggle deceased tore appellant's shirt off. The struggle ceased for a moment and appellant began to wash the blood from his face. Deceased followed him, saying: "I might as well finish you." The parties exchanged shots and deceased was killed. Appellant immediately surrendered to the officers. His shirt was torn and he was bloody. The foregoing facts were testified to by appellant and his witnesses.

The state proved by deceased's widow that appellant and deceased had been engaged as partners in the whisky business and that a few nights prior to the homicide a dispute had arisen over a settlement in which appellant appeared to have become angered.

The court charged on self-defense.

Appellant objected to the testimony of deceased's widow to the effect that appellant and deceased were engaged in the whisky business. In connection with her statement that the parties were so engaged the witness testified to a controversy which had arisen between the parties relative to a division of profits. The opinion is expressed that the testimony was properly received. It was appellant's theory that deceased had broken into his house and awaited his return in order to kill him. It was the state's theory, given support by the testimony, that the whisky belonging to appelant and deceased was kept at appellant's house, and that deceased had a right to be in said house. Moreover, according to the testimony of the witness, deceased appeared to have become angered when the controversy arose over the division of profits. We are unable to say that the testimony did not fairly tend to raise an inference as to a motive on the part of appelant to kill deceased. Section 1879, Branch's Annotated Penal Code; Woodward v. State, 58 S. W., 135.

Appellant's witness Goodwin gave material testimony in behalf of appellant. In an effort to impeach said witness, the state, over proper objection by appellant, elicited from Mrs. Taylor, wife of deceased, the following testimony: "I was at home just shortly prior to the death of my husband. Vashtine Goodwin come to my home which was just a few minutes before the shooting. I had a conversation with him then and Vashtine Goodwin made the statement to me, 'Omar, Boyd is going to kill Troy because he does not like a bone in his body, but I can't make Troy (deceased) understand, and Boyd (defendant) would have killed him downtown this afternoon if it had not been for me.' "

The court limited the testimony above quoted to the purpose of impeachment. In the case of Drake v. State, 29 Texas App., 265, 15 S.

W., 725, a witness for accused was asked upon cross-examination, the following question: "On the evening or night of August 27, 1887, the day Guinn was shot by your father, at or near the store of Charles Rast on Austin street in the city of Waco, Texas, and in the presence of Hugo Robinson, Street Baker, Bob Fleming and Todd Zeigler did you not say that you knew your father was going to kill Guinn before you left your father's house that morning?" The witness answered that he had not made any such statement. Thereafter, the state proved by Robinson and other witnesses that the witness did make the statement set forth in the question. In holding the testimony inadmissible, this court, speaking through Judge Willson, said:

"But the opinion or conclusion of the witness Drake, Jr. as to the intention and purpose of the defendant to kill the deceased cannot be brought within this or any other exception to the general rule. He could have detailed and presented to the minds of the jury the facts upon which his knowledge—or, what is the same thing, opinion—as to defendant's intention and purpose was predicated. He could have stated the words or acts of the defendant tending to develop such intent and purpose. Hence we say it was not competent to call for or prove a statement made by the witness which statement was nothing more than his opinion or conclusion. We must and do hold, therefore, that error was committed in allowing the witness Drake, Jr., to be impeached in the manner stated and shown by the defendant's bill of exception. We regard this error as material and reversible, notwithstanding the instruction of the court to the jury limiting their consideration of the impeaching testimony to the purpose for which it was admitted. It was proved by the positive testimony of four witnesses that the witness Drake, Jr., the son of the defendant, several hours after the homicide stated that he knew that his father was going to kill the deceased before he did kill him. While it is true that this statement was not criminative evidence against the defendant, and the jury were so instructed by the court, its probable effect upon the minds of the jury was to not only discredit the testimony of the witness Drake, Jr., whose testimony was very material to the defendant, but also to prejudice and influence the minds of the jury upon the main issue. It is not probable that the jury, in the consideration of the main issue, would or could divest their minds of the statement proved by four witnesses to have been made by the witness Drake, Jr. If the jury believed that he made such statement, would it be natural for them to obey the instruction of the court, and restrict their consideration of it to the impeachment of the witness? They might endeavor to do so, and believe they were doing so, and still be involuntarily and unconsciously influenced thereby."

The holding in Drake's case has never been overruled. On the contrary the doctrine therein announced has been approved in an unbroken

line of decisions, among them being the case of Jones v. State, 89 Texas Crim. Rep., 577, 232 S. W., 847. See also Theriot v. State, 89 Texas Crim. Rep., 428, 231 S. W., 777; Wood v. State, 85 Texas Crim. Rep., 268, 211 S. W., 782; Finks v. State, 84 Texas Crim. Rep., 536, 209 S. W., 155; Henley v. State, 81 Texas Crim. Rep., 221, 195 S. W., 197. Giving effect to the announcement of the decisions, we are constrained to hold that reversible error is presented.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.