FOWLER HOWLE v. THE STATE.

No. 14321. Delivered June 10, 1931.
Appeal Reinstated November 13, 1931.

18

The opinion states the case.

See also 114 Texas Crim. Rep., 612, 26 S. W. (2d) 651.

*Britton & Wherry* and *Bozeman & Cathey,* all of Quitman, and *Jones & Jones,* of Mineola, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

ON MOTION FOR REHEARING.

CHRISTIAN, JUDGE.—Under an indictment charging him with assault with intent to murder, appellant was convicted of an aggravated assault and his punishment assessed at a fine of $250, and confinement in jail for ten days.

The caption fails to show the date of the adjournment of the trial court. Under the decisions of this court the appeal must be dismissed. Sherman v. State, 115 Texas Crim. Rep., 414, 28 S. W. (2d) 801, and authorities cited.

The appeal is dismissed.

*Dismissed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON ITS MERITS.

CHRISTIAN, JUDGE.—A sufficient caption having been supplied, the appeal is reinstated and the case considered on its merits.

The conviction is for an aggravated assault under an indictment charging assault with intent to murder. On a former trial under the same indictment appellant was convicted of assault with intent to murder and his punishment assessed at two years confinement in the penitentiary. Upon appeal to this court the judgment was reversed. See Howle v. State, 114 Texas Crim. Rep., 612, 26 S. W. (2d) 651. The evidence adduced on the present trial is different in some respects from that found in the record on the former appeal.

While at a dance Jim Morgan, the injured party, had a quarrel with Charlie Housenfluke, but no physical encounter ensued. It appears that Housenfluke was drunk. Touching the difficulty with appellant, Jim Morgan's testimony was, in substance, as follows: He had started to

leave the dance when Housenfluke called him. He told Housenfluke that he (Housenfluke) was drunk and he was not going to have any trouble with him, but was going on home. At the time he made this remark to Housenfluke he (Morgan) was passing appellant. As they passed, appellant stated to him that "there wasn't no G— d— s— of a b— going to jump on Charlie Housenfluke." Morgan replied that he didn't reckon anybody wanted to jump on him. Appellant then said: "You G— d— s— of a b—, I will cut your head off." At the time of making this statement appellant cut Morgan with a knife, inflicting a wound on his neck two and one-half inches long and to the bone. Morgan then knocked appellant down and got on top of him. Appellant then began cutting at his legs. He caught appellant's hand and held it, and was trying to get the knife away from him when appellant's brother, Elmer Howle, walked up and began stabbing him in the right side under the arm. The parties were finally separated. After they were separated Elmer Howle said to him: "You G— d— s— of a b—, we will kill you; we come down here to kill you."

Appellant's plea was self-defense, and he introduced testimony to show that Jim Morgan attacked him first, using a pair of brass knucks. Appellant testified, in substance, that he saw Jim Morgan approach Charlie Housenfluke, and asked him not to molest him, as Housenfluke was drunk; that when he made this statement to Morgan, Morgan said "I will knock h—l out of you," and hit him with a pair of brass knucks. Appellant further testified that Morgan knocked him down and got on top of him; that Morgan continued to hit him with the brass knucks, and choked him; that he got out his knife and cut Morgan to make him get off of him. Appellant denied that he had had any previous trouble with Morgan. Further, he denied that he and his brother, Elmer Howle, acted together in attacking Morgan.

The wounds inflicted upon Morgan being of a serious nature, he was taken to a hospital for treatment.

The court charged on the law of self-defense, and also submitted an instruction on provoking the difficulty. Although it is shown in the opinion on the former appeal that appellant did not object to the submission of an instruction on provoking the difficulty, on the present trial by timely exception the charge was challenged on the ground that the evidence failed to raise the issue. The opinion is expressed that the exception was well taken. Under the evidence, the only question was this: Who made the first attack? The state's testimony was to the effect that appellant struck the first blow with a knife, inflicting a serious wound on the injured party, and that the injured party did not strike appellant until he had been attacked by appellant with the knife. From appellant's standpoint, the injured party began the assault on his own initiative by striking him with a pair of brass knucks. Thus it is seen that the evi-

dence was conflicting as to who made the first attack. In Dugan v. State, 86 Texas Crim. Rep., 30, 216 S. W., 161,164, Dugan and the deceased had had a quarrel. Some half hour later the parties went to the back end of deceased's store to talk the matter over. While there, according to the state's testimony, Dugan struck the deceased with some object, and a scuffle ensued. When the parties became disengaged, and were about six feet apart Dugan drew a pistol and shot deceased. Dugan's testimony was to the effect that, after he and the deceased reached the rear of the store, the deceased said to him, "Damn you. I will kill you," at the same time drawing a knife and cutting him under the arm; that he thereupon struck the deceased with his hand; that deceased pursued him and he finally struck the deceased in the face with his fist; that the deceased continued to pursue him, and that he fired the fatal shot for the purpose of protecting himself. In holding in Dugan's Case that the trial court committed error in charging on provoking the difficulty, this court said: "That character of charge is applicable in instances in which the first attack is made by the deceased, but is induced by words and conduct of the accused reasonably calculated and intended to provoke an attack which may be used by him as an occasion for doing harm to his adversary. The issue of provoking the difficulty does not arise from evidence which is merely conflicting as to who made the first attack. From the state's standpoint the first overt act was the striking of deceased by appellant with some heavy instrument. A struggle followed, which continued until up to the time that appellant fired the first shot. From appellant's viewpoint, as developed by the evidence, the deceased begun the assault on his own initiative and pursued it, using the knife and attempting to do so until the shots were fired. From either standpoint, we think the issue of appellant provoking the difficulty, with the intent to avail himself of an attack by deceased, brought on thereby, to injure the deceased, was not raised. This conclusion we understand to be in accord with frequent expressions of this court, among them Casner v. State, 43 Texas Crim. Rep., 12, 62 S. W., 914; Lockhart v. State, 53 Texas Crim. Rep., 596, 111 S. W., 1024; Beard v. State, 45 Texas Crim. Rep., 522, 78 S. W., 348; Winters v. State, 37 Texas Crim. Rep., 582, 40 S. W., 303; Airhart v. State, 40 Texas Crim. Rep., 470, 51 S. W., 214, 76 Am. St. Rep., 736; Wilson v. State, 46 Texas Crim. Rep., 527, 81 S. W., 34; Pollard v. State, 45 Texas Crim. Rep., 127, 73 S. W., 953."

We think it was proper to submit the law of principals. We are of the opinion, however, that, under the evidence, the court should, in submitting the converse of the law of principals, be guided by the suggestion found in Soria v. State, 83 Texas Crim. Rep., 343, 203 S. W., 57. Appellant's special charge on the subject was refused. Of course if appellant and Elmer Howle were not acting together as principals, and Elmer Howle stabbed the injured party to defend appellant from an attack on

the part of the injured party, he (Elmer Howle) not being a participant in the original difficulty in any manner, and coming upon the parties while the injured party had appellant down and was striking him, he (Elmer Howle) would not be a principal. In short, if appellant made the first attack without having an understanding with Elmer Howle, and the attack made on the injured party was not a joint attack of the two, then appellant would only be responsible for his own acts. Soria v. State, supra.

Appellant's witness, Mrs. Bernice Reed, gave material testimony in behalf of appellant. In an effort to impeach said witness, the state, over proper objection by appellant, elicited from Miss Verdis Reed, a witness for the state, the fact that Mrs. Bernice Reed said to her on the night of the difficulty: "Let us all go home, there is fixing to be trouble here, Elmer and Fowler (meaning appellant and his brother) is in the other room with knives out wanting to fight." Bearing in mind that it was the state's theory, given support in the testimony, that appellant and his brother, Elmer Howle, had conspired to attack the injured party, it would seem that the opinion of Mrs. Bernice Reed that there was going to be trouble would be calculated to lend weight to the position taken by the state. The statement that "there is fixing to be trouble here" was inadmissible. See Drake v. State, 29 Texas App., 265, 15 S. W., 725; Shannon v. State, 118 Texas Crim. Rep., 505, 38 S. W. (2d) 785.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.