**YESSLER v. DODSON.**

**No. 4702.**

Court of Civil Appeals of Texas. Amarillo.

Feb. 1, 1937.

On Rehearing March 3, 1937.

Rehearing Denied April 12, 1937.

Works & Bassett, of Amarillo, for appellant.

Shannon, Ochsner & Pheiffer, of Amarillo, for appellee.

MARTIN, Justice.

Appellee was hit by a truck driven by appellant and seriously injured. A concrete paved highway runs in a general east-west direction from Pampa to Amarillo. The day was a clear, sunshiny day, and a general view of the road unobstructed for some distance in both directions from the scene of the accident. Appellant was following a Ford car in a truck loaded with about 1000 gallons of gasoline and was traveling west. Appellee was working on the north side of said highway, drilling holes in the concrete pavement. Another car was at the time approaching the scene from the west, and traveling on its own, or the south side of said highway. At the scene of the accident, appellant swerved or turned to the right of the Ford car, attempting, apparently, to go around same on the north side. Appellee was struck and injured by the truck in such attempt. Appellee filed suit against appellant, alleging as a basis for recovery a multitude of acts of negligence. Of these, the following, with appropriate corollary issues, were submitted to the jury:

"Do you find and believe from a preponderance of the evidence that as defendant Yessler approached the scene of the collision in question there was a red flag posted as a warning signal on the highway a short distance cast of where plaintiff and his fellow-laborer were working? * * *

"Do you find and believe from a preponderance of the evidence that defendant Yessler failed to heed said warning signal, if any such there was, by reducing his speed to such an extent as to be able to avoid hitting plaintiff? * * *

"Do you find and believe from a preponderance of the evidence that the rate of speed at which defendant Yessler was traveling as he undertook to pass the machinery and workmen on or near the north half of the highway, if he did undertake to pass them, was negligence under the circumstances then existing? * * *

"Do you find and believe from a preponderance of the evidence that the act of defendant Yessler in undertaking to pass the workmen and machinery located on or near the north half of the highway, if he did undertake to pass them, at the time another motor vehicle traveling from west to east was passing said workmen and machinery, if such was the case, was negligence? * * *

"Do you find and believe from a preponderance of the evidence that as defendant Yessler was passing the workmen and machinery on or near the north half of the highway, if he was, said defendant turned his car to the right in order to avoid strik-

ing a Ford car that was traveling ahead of him? * * *

"Do you find and believe from a preponderance of the evidence that the act of defendant Yessler in turning his truck to the right as inquired about in Special Issue No. 22, if he did, was negligence?"

The court also submitted defensively the issues of unavoidable accident, contributory negligence, and the act of the Ford driver as the sole, proximate cause of the accident. All issues being answered favorably to appellee, judgment was entered for him in the sum of $5,667.

■ Some time after the accident, in a doctor's office in .Panhandle, a conversation took place between witness Butler and witness Allred. The latter was a working companion of appellee at the time of the accident, and testified in detail to facts favorable to appellee, after which appellant offered to prove by witness Butler the following portion of said conversation:

"I can't say, Judge, just which one of us said it. It occurs to me that Dacus or I once made the remark that the Ford car was really directly to blame—I believe that is the way it was put—and one or the other of the men who were working—Dodson or Allred—said—they agreed with us. I wouldn't say what their answer was. They agreed with us. * * *

"Now, just what is your best recollection as to which one made the remark?

"I believe it was Allred. * * *

"By the Court: What was the statement that you made, as you recall it?

"That I believed the Ford was directly to blame for the accident.

"By the Court: And Mr. Allred said what?

"That he thought so."

The trial court at first admitted this as impeaching evidence and afterwards struck same, which action is made the subject of appellant's first and second assignments of error.

The court's action was proper. The conversation amounted in effect to an expression of an opinion by bystanders upon one of the ultimate issues the jury was impaneled to try under instructions, the complicated and difficult nature of which appear later in this opinion.

There is apparently some divergence of view among American courts upon this question, but none in Texas, so far as our investigation reveals.

We quote from 70 C.J. pp. 1067, 1068: "Where, however, the witness testifies as to facts, there is a conflict of authority as to the admissibility of prior expressed opinions for the purpose of impeachment, one line of authority holding that such a witness cannot be discredited by a showing of prior expression of opinion by him, even though such expressions tend to contradict the inferences which might be drawn from his recital of facts, or are wholly inconsistent with the facts testified to, while other authorities hold that where the statement, although in the form of an opinion implies the statement of a fact clearly in conflict with the testimony of the witness on the stand such statement is admissible for the purpose of impeachment." Among the Texas cases there cited as supporting the view that such evidence is inadmissible are the following: Dixie Motor Coach Corp. v. Meredith (Tex.Civ.App.) 45 S.W.(2d) 364; Capitol Hotel Co. v. Rittenberry (Tex.Civ.App.) 41 S.W.(2d) 697; S. W. Slayden & Co. v. Palmo (Tex.Civ.App.) 151 S.W. 649, [aff. 108 Tex. 413, 194 S.W. 1103]; Houston, etc., Ry. Co. v. Adams, 44 Tex.Civ. App. 288, 98 S.W. 222; Howle v. State, 119 Tex.Cr. 17, 43 S.W.(2d) 594; Shannon v. State, 118 Tex.Cr. 505, 38 S.W. (2d) 785.

Even in states where such evidence is admitted, the rule is usually applied only in those cases where the opinion is closely related to the facts and implies the "statement of a fact clearly in conflict with the testimony of the witness on the stand." Under these cases, we would think the quoted testimony inadmissible under the particular record before.

Other contentions of a kindred nature to the above are believed to be controlled by it, and are overruled without discussion.

We do not impliedly hold that an opinion of a witness may never be admitted for impeachment purposes. The record might, and the writer thinks could, be such as to render same admissible.

■ A Mr. Lea was the driver of the Ford car. Appellant's theory of defense was that Lea suddenly slackened his speed or stopped his Ford car, forcing appellant to one side, which act was the

sole proximate cause of the accident. This defense was submitted, in a manner apparently satisfactory to appellant and was found against him. In addition, he asked to have submitted further defensive issues as to whether or not Lea failed to heed the warning of any flag, whether or not he failed to stop his car a reasonable distance before reaching the scene of the accident, etc. The court, in our opinion, properly refused these. The Ford car did not strike or injure appellee. There is no evidence raising the issue that his failure in the respects mentioned was the sole proximate cause of the accident. We doubt if it could be said that such even contributed to proximately cause the accident. If so, such concurring negligence is no defense. Ft. Worth & Denver City Ry. Co. v. Rowe (Tex. Civ.App.) 69 S.W.(2d) 169, 172. As we view it, there was no causal connection between any act of Lea and the accident unless it be his suddenly reducing the speed of his car at the scene of the accident, forcing appellant to one side. This was appropriately submitted.

Numerous objections appear to the court's submission of the acts of negligence quoted above. The objections appear hypercritical, but if not, we will not catalogue and discuss them for the reason that the judgment finds support in at least one ground of negligence, properly pleaded and submitted, and sufficiently supported in the evidence. West Texas Coaches, Inc., v. Madi et al. (Tex.Com. App.) 26 S.W.(2d) 199.

The court submitted defensively the issue of "unavoidable accident" and defined that term as follows: "By 'unavoidable accident' is meant such an unexpected catastrophe as occurs without anyone being to blame for it, that is, without anybody being guilty of negligence in doing or omitting to do the particular thing that caused the occurrence." A charge in almost this precise language was approved as substantially correct in the case of Vesper v. Lavender (Tex.Civ.App.) 149 S.W. 377 (writ ref.). In a case, whose controlling facts were identical with those here, the Supreme Court of Kansas uses the following language: "The term, 'a pure accident, for which no one was responsible,' as used in the above instruction, was for this case an appropriate and sufficient definition of the term 'unavoida-

ble accident.'" Engle v. Bowen et al., 122 Kan. 283, 251 P. 1108, 1109. For cases showing other definitions, but including cases where the above was in effect approved, see 3 Words and Phrases, Fourth Series, p. 738; 7 Words and Phrases, Third Series, pp. 670, 671. True, the definition does not confine negligence to the plaintiff and defendant as appellant contends it should. If it could be said that such definition is too broad in some cases, it seems harmless here, because appellant was protected by a defensive issue as to Lea's act, adverted to above, and which is the only act of a third party proven that in our opinion was entitled to be noticed in the charge. Thus, if no one was to blame or if a particular individual was to blame, appellant was exonerated. This was all and probably more than he was entitled to defensively under the facts of this record.

■ The court defined "proximate cause" as follows: "'Proximate cause,' as that term is used in law, means that cause, whether an act or an omission, which in a natural and continuous sequence, unbroken by any new and independent cause, produces a given injury, and without which the injury would not have occurred. To be the proximate cause of an injury, it must be such an act or omission that a person of ordinary prudence and caution ought to have foreseen and reasonably anticipated in the light of the attending circumstances that the injury complained of or some similar injury would naturally and probably result therefrom. It need not be the sole cause. There may be more than one proximate cause of an injury, but for a cause to be a proximate cause of an injury it must be either the sole cause or a concurring cause which contributed to the injury and but for which the injury would not have occurred. In the latter case it is said to contribute proximately to the injury in question." We need discuss this no further than to say it follows almost literally the language of a definition of such term approved as a correct abstract proposition of law by the Supreme Court in the case of Karotkin Furniture Co. v. Decker, 50 S.W.(2d) 795. Nothing is pointed out which rendered same erroneous under the facts here. Rather it seems the latter portion (to which appellant particularly objects) was demanded to save it from an

objection by appellee, that the concurring negligence of the Ford driver was a defense.

Finally, it is contended that the following, as a measure of damages submitted by the trial court, was erroneous: "In connection with the foregoing issue you are instructed that in assessing the damages, if any, you may take into consideration the following matters, or such of same, if any, as have been proved by a preponderance of the evidence, and none others, that you may find to be the proximate result, if any, of the collision in question, to-wit: Physical pain, if any, suffered by plaintiff in the past, if he has suffered such pain; physical pain, if any, which he will, with reasonable probability, suffer in the future, if he will suffer such pain; the decrease in earning capacity, if any, that plaintiff has suffered in the past and that he will, with reasonable probability, suffer in the future, if any; the permanent impairment of his health and physical faculties, if any; the reasonable cost of reasonable and necessary medical treatment in the past, if any, and the reasonable cost of such medical treatment, if any, as will be reasonable and necessary in the future; the reasonable and necessary cost of hospitalization, if any, that has been incurred by plaintiff; the reasonable and necessary cost of crutches and a brace, if same were reasonably necessary for the use of plaintiff and the treatment of his injuries."

The appellant's written objection to this is in the following language: "The issue on the measure of damages stated by the court under Special Issue No. 38 is erroneous and permits a double recovery in the following portion thereof, to-wit: .'The decrease in earning capacity, if any, that plaintiff has suffered in the past and that he will, with reasonable probability, suffer in the future, if any; the permanent impairment of his health, and his physical faculties, if any.' And in permitting the jury to include both permanent impairment of health and permanent impairment of physical faculties along with decrease in capacity to labor permits not only a double but a triple recovery."

Appellant points to no evidence or pleading in this case which rendered said charge erroneous under this particular record. His point amounts to an assertion that such charge is erroneous as an abstract proposition of law in any case. We therefore assume that the evidence properly shows:

(a) Decrease in earning capacity; (b) permanent impairment in health; (c) permanent impairment of physical faculties—each of these existing independently of the other. To illustrate: A receives a blow on the head. As a proximate result of this: (a) His general health is permanently impaired; (b) his earning capacity is decreased; (c) his hearing (a physical faculty) is gone in one ear. The loss of his physical faculty is entirely disassociated from his loss of health. A man may be in good health, and still not hear well, and vice versa. Keeping in mind that full compensation is the end sought to be attained, can we say that a general verdict, such as this, necessarily includes within it a double recovery, because of the presence in the court's charge of the language quoted above? We think not. We do not commend this charge, but hold that appellant has failed to demonstrate that under this particular record he has been harmed by same.

In our opinion no reversible error has been pointed out by appellant in his brief.

Judgment affirmed.

### On Motion for Rehearing.

■ Our holding supra on the measure of damages was based primarily upon the failure of the appellant to demonstrate in his brief that such charge was error under the particular facts of this case. In the light of appellant's motion for rehearing and the entire record, we have concluded that the quoted charge was erroneous. Three elements are therein submitted as a basis for measuring the amount of damages in such way as is "calculated to confuse and mislead the jury into assessing double damages." These are: (a) Physical pain; (b) permanent impairment of health and physical faculties; and (c) decrease in earning capacity. Without quoting it, we think the evidence in this case is such as to clearly show that loss of earning capacity resulted proximately from impairment of health and loss of physical faculties. Likewise, there was apparently no physical pain proven except that which came directly from these. These elements are so blended in the evidence that a jury could easily have been led to assess damages for the same thing twice. Appellee cites no authority which controls the precise record before us. Judge Sharp in International-G. N. Ry. Co. v. King (Tex. Com.App.) 41 S.W.(2d) 234, 235, reviews the authorities upon this question at length.

The charge therein considered, and a portion of his language, is as follows:

"(a) Bodily injuries, if any, physical pain and suffering, if any, and bodily inconvenience suffered by him, if any, from February 22, 1928, down to the date of this trial, and such as you may find he will reasonably and probably suffer in the future, if any.

"(b) Mental anguish suffered by him, if any, from February 22, 1928, down to the date of this trial, and such as you may find he will reasonably suffer in the future, if any.

"(c) The reasonable value of his decreased earning capacity from February 22, 1928, down to the date of this trial, if any.

"(d) The reasonable present value of his diminished capacity to perform labor and services in the future beyond this trial, if any. * * *

"'The decreased capacity to labor and earn money would necessarily be a result of the impairment of physical and mental health, and would be embraced in the incapacity to follow the calling he might otherwise have chosen. Incapacity to earn money could result from nothing except physical or mental injury, and would be embraced in incapacity to pursue any desirable vocation.' * * *

"Chief Justice James, in discussing the effect of the foregoing charge in the light of the rule announced by the Supreme Court, says: 'The rule applied by the Supreme Court in the Butcher [(International & G. N. R. Co. v. Butcher), 98 Tex. 462, 84 S.W. 1052] and Nesbit [(Missouri, K. & T. R. Co. v. Nesbit), 40 Tex.Civ. App. 209, 88 S.W. 891] Cases is understood to be that a charge is defective, not necessarily because it suggests to the jury the various subjects or elements of damages they may consider, but where it mentions the subjects in such a way and in such a connection as is calculated to lead them to treat items that enter into the same subject as separate and distinct elements of damage. There could be no objection to a charge which authorizes recovery for physical suffering, which in the same connection properly presents and explains the different matters which would come under that head for consideration. So, also, with mental suffering or diminished earning capacity. But when these matters are presented in such a way as to appear to treat them as distinct and independent items of damage, the charge is objectionable.' * * *

"If the injuries received by plaintiff from his 'bodily injuries' or 'bodily inconvenience' suffered by him affected him before the trial and would reasonably and probably affect him after the trial and in the future, that would necessarily include the decreased earning capacity either before or after the trial and in the future, and items (a), (c), and (d) in the language of the Supreme Court 'are so blended in their effects upon the sufferer that they are not capable of separation so as to admit of distinct compensation.' "

Appellant made a statement at Dr. York's office soon after the accident in substantial accord with his present defensive theory. He offered to prove by Dr. York that in reply thereto witness Allred (mentioned in the original opinion) stated: "That is the way I saw it and I don't blame you at all." According to the appellant's assignment of error this was offered as a whole. Thus measured, the court correctly excluded it, because it included the opinion of a bystander upon a controverted issue. The record is teeming with what in street parlance is called "boloney," and it is difficult to separate and segregate this from other proper parts. Apparently, the bill of exception shows only the first clause of the above was offered; that is, the clause, "That is the way I saw it." This statement alone and separated from the latter clause was, we think, clearly admissible as impeaching evidence. It was in effect the statement of a fact directly in conflict with Allred's testimony on the trial.

We recognize that appellant was entitled to an affirmative presentation of all defensive theories, including a correct definition in this case of "unavoidable accident." The one given above has been many times substantially approved. It is extremely difficult to phrase an inflexible definition applicable to and correct in all cases. The writer expresses doubt as to the propriety of using the word "negligence" in the definition of such term in every case.

The present controversy over the proper definition of such term can and doubtless will be avoided on another trial.

Appellee raises the point that no motion for new trial was filed in this case. The confusion in the authorities on this question was pointed out by Judge Sharp on December 9, 1936, in the case of Stillman

v. Hirsch (Tex.Sup.) 99 S.W.(2d) 270, 276. Such a motion was therein held necessary as a prerequisite to appeal, with certain exceptions, but it was further stated: "Therefore the holdings announced herein will not be enforced in cases tried before this opinion is rendered and not until the bench and the bar have a reasonable time to become familiar with same."

Motion for rehearing granted, and judgment of the trial court is reversed and cause remanded.