Herman Harold THOMAS,
Petitioner-Appellant,

v.

James A. LYNAUGH, Interim Director,
Texas Department of Corrections,
Respondent-Appellee.

No. 86–2159
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 12, 1987.

---

William R. Pemberton (Court-appointed), Crockett, Tex., for petitioner-appellant.

Charles A. Palmer, Liz Bills, Asst. Attys. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for respondent-appellee.

Before CLARK, Chief Judge, GARWOOD and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

Herman Harold Thomas appeals complaining that the district court erred in dismissing his petition for writ of habeas corpus. In his petition, brought pursuant to 28 U.S.C. § 2254, Thomas alleged that he received ineffective assistance of counsel during his state criminal prosecution and that he was denied due process of law because the state prosecutor was allowed to propound improper and inflammatory questions to two defense witnesses. After considering Thomas' arguments, we find them unpersuasive and accordingly affirm.

## I.

Thomas is currently an inmate in the Texas Department of Corrections. He is serving a ninety-nine year sentence for the 1974 murder of his estranged wife, Ruth Thomas.

On May 18, 1974, Ruth Thomas and her sister Viola Richardson were returning to Richardson's home just outside Tyler, Texas. The two women had been to Tyler to run several errands and to have lunch. As their automobile pulled into Richardson's driveway, an automobile driven by Thomas pulled in behind them. Thomas jumped out of his automobile and began shooting into the automobile containing Ruth Thomas and Richardson. After firing three times with a shotgun from a distance of two to ten feet from their automobile, Thomas got back in his automobile and left the Richardson home. Ruth Thomas died as a result of two shotgun blasts to the head, chest, and arm. Richardson had been shot in the foot. Shortly after the shooting Thomas turned himself in to the Smith County Sheriff's Office in Tyler.

At his trial for the murder of his wife, Thomas was represented by appointed counsel. The state's evidence was substantial including three eyewitnesses to the shooting. The eyewitnesses were Richardson, Arthur Loftin (a cousin of Richardson), and Billy Ray Marshall (a friend of Loftin). Loftin and Marshall were passing the Richardson home just before and during the shooting. Each eyewitness testified that immediately prior to the shooting Thomas' automobile was "tailing" at a high rate of speed the automobile driven by Ruth Thomas and carrying Richardson. Loftin and Marshall both testified that Thomas' automobile was often on the wrong side of the road during this encounter and that they had to pull off the road and stop in front of the Richardson home to avoid a collision. Each eyewitness also testified that Thomas pulled into the Richardson driveway, jumped out of his automobile while the engine was still running, and immediately opened fire with the shotgun he carried. The eyewitness and medical testimony indicated that Thomas first fired through the rear window of his wife's automobile, then shot again through the left side window. One of these shots hit Ruth Thomas in the face. The testimony then indicated that Thomas ran around the back of the automobile, tussled with Richardson who was injured, and then returned to the left front side of the automobile. While standing approximately two feet from the driver's window he shot his wife in the upper torso. All three eyewitnesses testified that Thomas then returned to his automobile and quickly left the scene.

Thomas testified at trial in his own defense. He testified that while driving in traffic, his wife passed him and motioned for him to follow. He stated that he followed her to Richardson's home. Thomas testified that as he pulled into the driveway he saw his wife pointing a pistol at him, and that he abandoned his automobile and shot her in self-defense. When asked why he fired three shots, Thomas stated that after the first and second shots his wife was still pulling the trigger on the pistol.

In his defense Thomas also presented evidence that his wife had possessed a pistol at an earlier time and that he had taken it away from her. There was however conflicting testimony as to whether Ruth Thomas had ever threatened Thomas with the gun. Thomas testified that the pistol his wife had on the day of her death was the same pistol he had taken from her. Thomas also presented two witnesses, a pastor and a local attorney, that testified as to his community reputation for peacefulness and non-violence. Over defense objections, the prosecutor cross-examined both witnesses with a series of "have you heard" questions regarding eight prior arrests of Thomas in California and West Texas between 1961 and 1969.

The state countered Thomas' self-defense position with the testimony of the three eyewitnesses. All three stated they saw no gun in the possession of Ruth Thomas at the time of the shooting. The state also produced investigation reports and sheriff officials to confirm that no pistol was found in the automobile or around the

scene of the shooting.[1] Finally, the state produced testimony that Thomas had on several prior occasions threatened to kill his wife because of their pending divorce. In rebuttal Thomas asserted that his wife's family had removed the pistol from the scene and hidden it. He also contended that his wife's family had coordinated their stories so as to ensure his conviction.

In light of Thomas' testimony that he shot his wife in self-defense, the state trial court instructed the jury on the Texas law of self-defense.[2] The court also instructed the jury on the doctrine of "provoking the difficulty" which limits a defendant's self-defense defense.[3] The defense counsel did not object to the instruction on provoking the difficulty.

The jury returned a verdict of guilty and sentenced Thomas to ninety-nine years. Thomas' conviction was affirmed in an unpublished opinion. *Thomas v. State*, 531 S.W.2d 648 (Tex.Crim.App.1976) (per curiam) (mem.). After three state habeas corpus applications contesting his conviction, Thomas exhausted his state remedies with no success. The state in this case concedes exhaustion. Thomas then commenced this federal habeas action. After an evidentiary hearing, the magistrate recommended that Thomas' petition for relief be denied. Over Thomas' objections the

1. The state also presented evidence that the pistol Thomas turned over to the police in Tyler remained in police custody until the time of Ruth Thomas' death. The evidence also established that the police released the pistol to the care of one of Ruth Thomas' attorneys and that this attorney returned the pistol to Ruth Thomas' family after her death.

2. The court's charge read as follows:

It is a defense to prosecution for murder when the conduct of the Defendant is justified by law.

A person is justified by law in using force against another when and to the degree he reasonably believes that force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.

The use of deadly force against another is justified by law if the use of force is justified by law as above set out and if a reasonable person in the Defendant's situation would not have retreated and when and to the degree the Defendant reasonably believes that deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force.

The term "deadly force" means force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury.

The term "reasonable belief" means a belief that would be held by an ordinary and prudent man in the same circumstances as the Defendant.

Now bearing in mind the above instructions, if you find from the evidence, or if you have a reasonable doubt thereof, that at the time the Defendant caused the death of RUTH THOMAS, if he did, the Defendant reasonably believed that the use of deadly force and the degree of deadly force used, if it was, was immediately necessary to protect himself against the said RUTH THOMAS' use or attempted use of unlawful deadly force, and if you further find from the evidence, or if you

have a reasonable doubt thereof, that a reasonable person in the Defendant's situation would not have retreated, then you shall acquit the Defendant of the offense of murder and say by your verdict not guilty.

3. The court's charge on provoking the difficulty read as follows:

You are instructed that the law qualifies the right of self defense as follows: If a Defendant brings about the necessity of using force against another, by provoking the other's use or attempted use of unlawful force against him, he cannot claim that his use of force was justified by reason of self defense, unless he abandons the encounter, or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the encounter and the other nevertheless continues or attempts to use unlawful force against him.

Now, if you believe from the evidence in this case beyond a reasonable doubt that the Defendant brought about the necessity of using force against RUTH THOMAS by provoking RUTH THOMAS' use or attempted use of force against him so that he, the Defendant, might then use deadly force against RUTH THOMAS, if he did, you will not hold in favor of the Defendant on the issue of self defense.

On the other hand, if you have a reasonable doubt that the defendant did intend to provoke the difficulty or did intend to provoke the use of force by the said RUTH THOMAS, or if you have a reasonable doubt that the Defendant abandoned the encounter or clearly communicated to the said RUTH THOMAS his intend to abandon the encounter reasonably believing he could not safely abandon the encounter, but the said RUTH THOMAS nevertheless continued or attempted to use unlawful force against him, the said Defendant, then the Defendant's right of self defense is not in any way lessened and you will decide the issue of self defense in accordance with the law on that subject as above stated.

district court adopted the magistrate's recommendation and dismissed the petition. Thomas filed a timely notice of appeal, and the district court issued a certificate as to probable cause to appeal and granted Thomas leave to proceed in forma pauperis.[4]

## II.

Thomas' first contention on appeal is that he received ineffective assistance of counsel because his appointed attorney failed to object to the court's "provoking the difficulty" charge to the jury. Thomas argues that there was no evidentiary or legal basis in this case for instructing the jury on the provoking the difficulty doctrine; that if his counsel had preserved the error by way of an objection, his conviction would have been overturned on direct appeal and a new trial ordered; and thus he has been prejudiced by his counsel's failure to object.

█ The sixth amendment guarantees a criminal defendant reasonably effective assistance of counsel. *Cuyler v. Sullivan,* 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). To merit habeas relief on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-prong test set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Bates v. Blackburn,* 805 F.2d 569, 577 (5th Cir.1986). In *Strickland* the Supreme Court held that before post-conviction relief can be granted for ineffective assistance of counsel the petitioner must establish: (1) that counsel's performance was deficient in that it fell below an objective standard of reasonable professional service; and (2) that this deficient performance prejudiced the defense such that there is a reasonable probability that the outcome of the trial has been undermined and the result would have been different. *Strickland v. Washington,* 466 U.S. at 697–98, 104 S.Ct. at 2069–70; *see also Bates,* 805 F.2d at 577–78. A petitioner's failure to establish both prongs of the *Strickland* test warrants rejection of his claim. *See Bates,* 805 F.2d at 578–79. We

therefore turn to the issue of whether petitioner has met the burden imposed by *Strickland.*

█ After reviewing the Texas law on the "provoking the difficulty" doctrine, we do not believe counsel's failure to object to the instruction was deficient performance. Instead, given the facts of this case the instruction was proper. Under Texas law the "provoking the difficulty" doctrine limits a defendant's otherwise absolute justification of self-defense. *See Dirck v. State,* 579 S.W.2d 198, 203 (Tex.Crim.App.1979) (en banc). The doctrine limits the right of self-defense by not extending the right to a situation where the defendant provokes the victim into adverse action as a pretext for the defendant's injurious response. *See Williamson v. State,* 672 S.W.2d 484, 485–86 (Tex.Crim.App.1984) (en banc). The Texas Court of Criminal Appeals has recently summarized and discussed the doctrine of provoking the difficulty and has set out the guiding standards for when an instruction on the doctrine is appropriate. *See Matthews v. State,* 708 S.W.2d 835 (Tex.Crim.App.1986) (en banc).

In *Matthews* the court stated:

[A] charge on provoking the difficulty is properly given when:

1. Self defense is an issue;

2. There are facts in evidence which show that the deceased made the first attack on the defendant; and

3. The defendant did some act or used some words intended to and calculated to bring on the difficulty in order to have a pretext for inflicting injury upon the deceased.

\*　　\*　　\*　　\*　　\*　　\*

This determination is limited to whether there is any evidence raising the issue. 708 S.W.2d at 837–38. The court stressed that so long as there was any evidence, regardless of weight or amount, as to the defendant's provoking actions or words then the matter is properly submitted to the jury. *Id.* at 838 (quoting *Norwood v. State,* 135 Tex.Cr.R. 406, 120 S.W.2d 806,

---

**4.** Thomas has been represented in the district court and on appeal by appointed counsel.

809 (1938); *see also Williamson*, 672 S.W.2d at 486.[5]

Applying the *Matthews* standards to this case, we are of the opinion that the instruction was proper. The justification of self-defense was in issue as a result of Thomas' own testimony. There was also evidence from Thomas that his wife made the first threatening move by pointing a gun at him as he pulled into the driveway. Lastly, there was evidence presented which suggested that Thomas provoked the situation by pursuing his wife's automobile at a high rate of speed and threatening manner and by threatening her life shortly before the incident. Accordingly, under Texas law, the trial court properly submitted the instruction in the charge and any objection by Thomas' counsel would probably have been futile.[6]

■■■ We, therefore, conclude that Thomas has not established that his trial counsel's failure to object to the "provoking the difficulty" instruction amounted to a deficient performance under *Strickland*. Thus, Thomas cannot gain federal habeas relief on this claim.[7]

### III.

As a second ground for federal habeas relief, Thomas asserts that erroneous state evidentiary rulings denied him due process of law. Thomas alleges that his due process rights were violated because the prosecution was allowed to ask his character witnesses "have you heard" questions about his prior criminal arrest and conviction record. We disagree.

The witnesses in each instance testified that they were familiar with Thomas' reputation as a peaceful, law-abiding citizen in the Tyler community during the two years before the shooting and trial. On cross-examination the prosecution, over the objection of defense counsel, was allowed to ask each character witness whether they had heard about several arrests and convictions of Thomas that occurred between 1961 to 1969 in California and West Texas.

Thomas complains that the questions were improper because (1) the witnesses were not reputation witnesses and therefore the "have you heard" questions were not proper under Texas law, and (2) even if the questions were allowable the other incidents were so remote in time and place as to warrant their exclusion. The state responds that the questions were proper, and alternatively that if they were improper, they amount at most to harmless error.

■■■ We find it unnecessary to decide whether the questions should have been allowed or prohibited, for even if we assume that the state court erred in allowing the questions, Thomas deserves no relief on this claim. Federal habeas corpus relief may be granted on erroneous state evidentiary rulings only if the challenged evidence is a crucial, critical, or highly significant factor in the context of the entire trial.

---

5. The district court and magistrate incorrectly reasoned that an instruction on provoking the difficulty was only proper if the evidence that the deceased acted first and that the defendant provoked the situation was uncontroverted. The *Matthews* and *Williamson* opinions place no such requirement in the standards controlling the propriety of a provoking the difficulty instruction.

6. In the courts below and on appeal, Thomas cites *Dugan v. State*, 86 Tex.Cr.R. 130, 216 S.W. 161 (1919), and *Howle v. State*, 119 Tex.Cr.R. 17, 43 S.W.2d 594 (1931), and *Dirck v. State*, 579 S.W.2d 198 (Tex.Crim.App.1979), as authority that the provoking the difficulty instruction in his case was erroneous. His reliance on these cases is misplaced because the instruction in each case was improper because there was no evidence that the defendant provoked the situa-

tion which resulted in the victim's death or injury. As noted above there was some evidence suggesting Thomas intentionally provoked the situation in this case.

7. Our conclusion would be the same even if we had first addressed the prejudice prong of *Strickland*. Had Thomas' trial counsel performed as Thomas now says he should have, there is no reasonable probability that the result of Thomas' guilt trial would have been different, especially in light of the overwhelming evidence of his guilt. *See Summit v. Blackburn*, 795 F.2d 1237, 1243 (5th Cir.1986); *Ricalday v. Procunier*, 736 F.2d 203, 208 (5th Cir.1984). As we stated in *Summit*, there was "no reasonable probability that [action by counsel] could have effectively weakened the incriminating power of the evidence" against the defendant. *Summit*, 795 F.2d at 1243–44.

See *Mullen v. Blackburn,* 808 F.2d 1143, 1143–46 (5th Cir.1987); *Johnson v. Blackburn,* 778 F.2d 1044, 1051 (5th Cir. 1985); *Bailey v. Procunier,* 744 F.2d 1166, 1168–69 (5th Cir.1984); *Skillern v. Estelle,* 720 F.2d 839, 852 (5th Cir.1983), *cert. denied,* 469 U.S. 873, 105 S.Ct. 224, 83 L.Ed.2d 153 (1984). While the "have you heard" questions may have prejudiced Thomas' defense by creating adverse inferences about his character, within the context of the entire trial their admission was harmless considering the substantial evidence of Thomas' guilt. The eyewitness testimony clearly established that Thomas deliberately shot and killed his wife. Thomas' evidence of self-defense was provided only by himself and was contradicted by the eyewitnesses to the shooting. His defense was also undermined by the fact that no pistol was seen or found and that the pistol he thought his wife possessed was in police custody at the time of the shooting. There was also evidence that Thomas had threatened his victim before the murder. In light of such evidence we conclude that any prejudicial effect of the "have you heard" questions was not a substantial or critical factor in the determination of Thomas' guilt. *See Mullen,* at 1145–46.

We conclude therefore that Thomas' second ground for relief does not raise an error of constitutional magnitude; therefore, habeas relief was properly denied.

## IV.

For the reasons stated above, we affirm the district court's dismissal of Thomas' petition for writ of habeas corpus.

AFFIRMED.